

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-07-064-CV

BILLY DON GIFFORD                                                    APPELLANT

V.

DON DAVIS AUTO, INC. D/B/A                                           APPELLEES
DON DAVIS TOYOTA AND
TOYOTA MOTOR CREDIT CORPORATION

------------

FROM COUNTY COURT AT LAW NO. 2 OF TARRANT COUNTY

------------

## OPINION

------------

This appeal arises out of a used car purchase. The trial court granted summary judgment against the purchaser. We affirm in part and reverse and remand in part.

**Background**

On February 21, 2004, appellant Billy Don Gifford purchased a 2001 Toyota Tacoma from appellee Don Davis Auto, Inc. d/b/a Don Davis Toyota ("Don Davis"). Don Davis used a form retail installment sales contract for this transaction. Appellee Toyota Motor Credit Corporation ("Toyota Motor Credit") financed Gifford's purchase through a separate installment contract.

The contract between Gifford and Don Davis included a charge for $1,265.00 for an extended warranty to be provided by "Toyota C." The contract also contained a charge for $47.44 for a "dealer's inventory tax paid to seller." Finally, the contract included a charge for $1,766.42 for credit life and credit disability insurance. At some point after Gifford took possession of the car, he became unable to pay. Toyota Motor Credit began collection efforts, which culminated in repossession.

Gifford sued Don Davis and Toyota Motor Credit asserting claims against Don Davis for fraud, violations of the Texas Finance Code and Deceptive Trade Practices Act ("DTPA"), and breach of fiduciary duty and claims against Toyota Motor Credit for unfair debt collection practices, wrongful repossession, conversion, and slander of credit. Appellees filed a joint motion for summary judgment on both traditional and no-evidence grounds. Without specifying the basis for its ruling, the trial court granted summary judgment for Appellees. This appeal ensued.

**Standard of Review**

We review a summary judgment de novo.[1] The movant for a traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that the movant is entitled to summary judgment as a matter of law.[2] A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.[3] In deciding whether there is a genuine issue of material fact, we take all evidence favorable to the nonmovant as true and make all reasonable inferences in the nonmovant's favor.[4]

A no-evidence motion for summary judgment places the burden on the nonmovant to present summary judgment evidence raising a genuine issue of material fact as to any challenged elements.[5] If the nonmovant presents more than a scintilla of evidence to raise a genuine issue of material fact, summary

---

[1] *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

[2] *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985).

[3] *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004).

[4] *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997).

[5] *See* Tex. R. Civ. P. 166a(i); *see also Espalin v. Children's Med. Ctr. of Dallas*, 27 S.W.3d 675, 682–83 (Tex. App.—Dallas 2000, no pet.).

judgment should be denied.[6] More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions."[7] In determining whether the nonmovant has met this burden, we consider the evidence in the light most favorable to the nonmovant.[8]

## Analysis

In a single point of error, Gifford contends that the trial court erred by granting summary judgment for Appellees on all his claims. We will consider each claim in turn.

### *Fraud*

Gifford alleged that Don Davis fraudulently induced him to enter into the retail installment sales contract. Gifford's fraud claims are predicated on two alleged misrepresentations in the installment contract, specifically, that Don Davis misrepresented the nature of the dealer's inventory tax and included an itemized charge for an extended warranty that Don Davis never provided or intended to provide.

---

[6] *Espalin*, 27 S.W.3d at 683.

[7] *Merrill Dow Pharms. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (citations omitted).

[8] *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 833 (Tex. App.—Dallas 2000, no pet.).

***Fraud – Dealer's Inventory Tax***

Gifford asserts that Don Davis's inclusion of a "dealer's inventory tax" as an itemized charge in the installment contract amounts to a fraudulent misrepresentation because it misled him into thinking that a "dealer's inventory tax" is assessed at the time of the sale and that he, not Don Davis, owed this "tax." To assess this claim, we must construe Texas statutes regarding the items that may be included as itemized charges in a motor vehicle retail installment contract and whether the "dealer's inventory tax" is such an item.

In Texas, sales of motor vehicles by installment contracts are subject to the requirements in chapter 348 of the Texas Finance Code.[9] Section 348.102(a)(7) mandates that an installment contract for the sale of a motor vehicle "must contain . . . each itemized charge."[10] Section 348.005(2) authorizes a retail seller of a motor vehicle to include "any taxes" as itemized charges in the amount financed in a retail installment sales contract.[11] Accordingly, if the "dealer's inventory tax" is a tax within the meaning of "any taxes" as used in section 348.005(2), a retail seller is authorized to include it as an itemized charge in an installment contract.

---

[9] Tex. Fin. Code Ann. §§ 348.001–.518 (Vernon 2006).

[10] *Id.* § 348.102(a)(7).

[11] *Id.* § 348.005(2).

5

Subchapter B of Chapter 23 of the Texas Tax Code contains provisions for appraisal of a dealer's inventory for ad valorem tax purposes.[12]  Section 23.121 specifies how the value of a dealer's motor vehicle inventory is to be calculated on January 1 of each year for assessment of ad valorem taxes on that inventory.[13]  The value of a motor vehicle dealer's inventory on January 1 is one-twelfth of the dealer's total annual sales volume for the prior tax year.[14]

The tax code requires each dealer to maintain an escrow account with the local tax assessor-collector to accumulate funds to apply toward the dealer's next-year tax liability on its vehicle inventory.[15]  Each month the dealer deposits an amount equal to the total unit property tax values assigned to all vehicles sold from the dealer's inventory in the prior month.[16]  The dealer assigns a unit property tax to each vehicle at the time of sale based on the formula in sections 23.122(a)(12) and (b).[17]  The unit property tax reflects the amount that the dealer must deposit in the inventory tax escrow account for the sale of a

---

[12] Tex. Tax Code Ann. §§ 23.121–.124 (Vernon 2008).

[13] *Id.* § 23.121.

[14] *Id.* § 23.121(b).

[15] *Id.* § 23.122.

[16] *Id.* § 23.122(c).

[17] *Id.* §§ 23.122(a)(12), (b).

particular vehicle.[18]  The escrowed funds are then applied as prepayment of property taxes to be levied against the dealer's motor vehicle inventory value on January 1 of the subsequent year.[19]  The dealer may not withdraw any funds deposited to the escrow account.[20]  The assessor-collector is required to distribute all the escrowed funds to the relevant taxing units no later than February 15.[21]

Gifford contends that the "vehicle inventory tax" is not a "tax" that can be included as an itemized charge in an installment contract under section 348.005(2) of the finance code.  It is instead, Gifford argues, a "deposit" toward the dealer's future tax liability.  Accordingly, Gifford contends, by including this deposit in the installment contract as an itemized charge for a "dealer's inventory tax," Don Davis fraudulently misled him into believing that he owed a tax when he bought the car, when in fact he did not, and that Don Davis was going to pay that "tax" at the time of purchase, when in fact all Don Davis did was make a deposit into an escrow account.

---

[18] *Id.* § 23.122(b).

[19] *Id.* § 23.122(c).

[20] *Id.* § 23.122(d).

[21] *Id.* § 23.122(k).

7

Don Davis argues in response that the dealer's inventory tax is in fact a tax that retail sellers are authorized to include as an itemized charge in installment contracts and that Don Davis's inclusion of this tax as an itemized charge was not a misrepresentation.  We agree with Don Davis.

More than one hundred years ago, the Supreme Court of Texas explained that the Texas Constitution authorizes the legislature to provide for the manner of assessment and payment of ad valorem property taxes and that the value of different types of property could and probably must be assessed by different methods:

> [T]axation by a uniform rule does not necessarily demand that there should be the same mode of assessment for every species of property, without regard to any classification.  An assessment, in the sense of a valuation of the property of the taxpayer for the purpose of determining the proportion of tax to be paid, should, it is true, be uniform in its mode, to the extent that the property is assessed according to its true value in money.  But it would not follow that different classes of property may not be valued for taxation by different officers and boards, and by different modes and agencies. . . .
>
> Our Constitution, after declaring that "taxation shall be equal and uniform," and that property shall be taxed in proportion to its value (evidently alluding to ad valorem taxes), adds in the same sentence: "Which [value] shall be ascertained as may be prescribed by law." This would seem to leave the Legislature free to adopt the mode of ascertaining the value of any class of property by such method as it might deem best.  If such was the intention, we think it a wise provision.  Property is so various and ascertainment of its value in some cases is so difficult that no mode of such ascertainment

8

absolutely uniform in every respect could effect the important end of equalizing the burden upon all property owners alike.[22]

Here, the legislature has chosen to assess ad valorem taxes against motor vehicle dealer inventories by way of a prepayment based on the unit property tax value assigned to each unit at the time of sale.[23] The fact that this is how the tax is assessed and collected does not make it any less a tax than other ad valorem taxes.

In construing the finance and tax code provisions at issue here, we find it significant that in 1994, shortly after the legislature promulgated what is now section 23.122 of the tax code, the Finance Commission, the agency charged with enforcing the finance code, approved the opinion of the Texas Consumer Credit Commissioner that the "unit property tax value" is "encompassed in the term 'any taxes' as used in [section 23.122]" and that "the unit property tax value could be included in the cash price or shown as an itemized charge [in an

---

[22] *Mo., Kan. & Tex. Ry. Co. of Tex. v. Shannon*, 100 Tex. 379, 393–94, 100 S.W. 138, 143–44 (1907); *see also State v. Wynne*, 134 Tex. 455, 468–69, 133 S.W.2d 951, 958 (Tex. 1939) ("The burden of levying taxes rests on the Legislature, and that body has [the] plenary power of prescribing the mode of taxation to raise revenue; and the specification of certain objects and subject of taxation in the Constitution does not prevent it from passing laws requiring other subjects or objects to be taxed, unless expressly prohibited by the Constitution.").

[23] Tex. Tax Code § 23.122(c).

9

installment contract] . . . ."[24]  We believe this construction is reasonable and reflects the legislature's intent.   Accordingly, we conclude that the "unit property tax value" is a tax pursuant to the tax code and that the finance code authorizes dealers to include the amount of the unit property tax value for a particular vehicle at the time of sale as an "itemized charge."

The question remains, however, whether Gifford has raised a fact issue as to whether Don Davis misrepresented the nature of the tax such that Gifford was misled into believing that he, not Don Davis, owed the tax.   The installment contract included as an itemized charge an amount for a "dealer's inventory tax paid to seller."   Gifford provided an affidavit stating that this language caused him to believe that he, not Don Davis, owed this tax.   But Gifford's subjective belief about what the words "dealer's inventory tax paid to seller" mean is not dispositive of whether those words amounted to a misrepresentation.

The Office of the Consumer Credit Commissioner promulgated regulations detailing what dealers are required to include in motor vehicle installment sales

---

[24] 19 Tex. Reg. 655 (Jan. 24, 1994) (summary of interpretation); *see also Mid-Century Ins. Co. of Tex. v. Ademaj*, 243 S.W.3d 618, 623 (Tex. 2007) (construction of statute by administrative agency charged with its enforcement is entitled to serious consideration, so long as construction is reasonable and does not contradict plain language of statute).

contract. These regulations state that such a contract must have the following disclosures:

> (4)    Itemized charges not included in the cash price, as required by Texas Finance Code, §348.102(a)(7). Itemized charges may include, but are not limited to, the following charges as applicable: . . .
> 　　　(C)    Dealer's inventory tax . . . .[25]

The commissioner's office has also published in the regulations a model "motor vehicle retail installment sales contract."[26] This model contract includes the "[d]ealer's inventory tax" as one of the "[o]ther charges including amounts paid to others on [buyer's] behalf" that must be listed in the itemization of the amount financed.[27]

Don Davis's installment contract is taken almost verbatim from the model contract. The only modification made by Don Davis is that its contract references a "Dealer's Inventory Tax *Paid to Seller*." [Emphasis added.] The addition of "Paid to Seller" conveys that, unlike other itemized charges that may be "amounts paid to others on [buyer's] behalf," the dealer's inventory tax is paid to Don Davis. Accordingly, Don Davis did not misrepresent the nature of the dealer's inventory tax or that Gifford was obligated to pay the tax as

---

[25] 7 Tex. Admin. Code § 84.804(4)(C).

[26] *Id.* § 84.809(b).

[27] *Id.*

11

anything but a charged amount payable to Don Davis.  Thus, as a matter of law, Don Davis made no misrepresentation regarding the dealer's inventory tax, and the trial court did not err by granting summary judgment for Don Davis on Gifford's fraud claim regarding the dealer's inventory tax.

### Fraud – Extended Warranty

Gifford also based a fraud claim on the itemized charge for an extended warranty.  In his affidavit, Gifford states Don Davis told him that $1,265.00 was being paid to "Toyota C." for an extended warranty.  Gifford claims that this statement is fraudulent because, Gifford alleges, Don Davis never actually paid "Toyota C." for the extended warranty.  Because appellees' no-evidence summary judgment motion asserted that there is no evidence of any misrepresentation by Don Davis, Gifford had the burden to produce some evidence demonstrating that Don Davis never paid "Toyota C." for the extended warranty.[28]

The only evidence Gifford presented to support his claim that "Toyota C." was never paid was Don Davis's responses to Gifford's requests for production.  Specifically, Gifford asked Don Davis to produce any documents "relating to the amount and payment of other charges delineated in the Retail Installment Sales

---

[28] *See* Tex. R. Civ. P. 166a(i).

Contract including the amounts paid on behalf of purchaser." After objecting to this request, Don Davis answered, "None, except as previously made available or in Plaintiff's possession."

Gifford asserts that this answer is some evidence that Don Davis has no documents showing payment to "Toyota C." for the warranty which, Gifford argues, raises a fact issue as to whether such a payment was made. We disagree. At most, this answer is evidence only that Don Davis has no documents reflecting payment for the extended warranty other than those already made available to Gifford or in Gifford's possession. Gifford presented no evidence that he reviewed all documents made available by Don Davis and none show payment to "Toyota C.", nor does he state that he has no such documents in his possession. In the absence of other evidence to support this claim, we cannot say that Gifford has presented more than a scintilla of evidence to raise a genuine issue of material fact. We, therefore, conclude that the trial court properly granted summary judgment for Appellees on Gifford's fraud claim based on the extended warranty.

***Unaddressed Causes of Action***

Summary judgment cannot be granted except on the grounds expressly presented in the motion.[29] In determining whether grounds are expressly presented, reliance may not be placed on briefs or summary judgment evidence.[30] The purpose of this requirement is to provide the opposing party with adequate information for opposing the motion and to define the issues or points for the purpose of summary judgment.[31]

Gifford asserted claims under chapter 349 of the finance code, which creates private causes of action for certain alleged finance code violations.[32] To the extent Appellees sought summary judgment as to these claims, their summary judgment motion addressed alleged violations based solely on inclusion of the "dealer's inventory tax" as an itemized charge in the installment contract. For the reasons stated above as to Gifford's fraud claims, summary judgment was proper as to any claims that Don Davis violated the finance code

---

[29] *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 204 (Tex. 2002); *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997).

[30] *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993).

[31] *Westchester Fire Ins. Co. v. Alvarez*, 576 S.W.2d 771, 772 (Tex. 1978); *Camden Mach. & Tool, Inc. v. Cascade Co.*, 870 S.W.2d 304, 309 (Tex. App.—Fort Worth 1993, no writ).

[32] Tex. Fin. Code Ann. §§ 349.001–.503 (Vernon 2006).

based on allegedly misrepresenting the nature of the dealer's inventory tax charge.

However, Gifford's petition raised other alleged finance code violations. Because Appellees failed to address these other allegations in their summary judgment motion, the trial court erred by granting summary judgment on Gifford's other finance code violation claims.[33]

Gifford also sought an order under section 17.50 of the DTPA permanently enjoining Don Davis from engaging in deceptive conduct like that alleged generally in his petition. Because Don Davis's summary judgment motion did not address all of the allegations of deception or misrepresentation raised by Gifford's petition, summary judgment as to Gifford's DTPA claim was improper.[34]

Finally, Gifford asserted claims for wrongful repossession, conversion, unfair debt collections, and slander of credit. Appellees failed to address any

---

[33] *See Johnson*, 73 S.W.3d at 204; *Martinez*, 941 S.W.2d at 912.

[34] *See Johnson*, 73 S.W.3d at 204; *Martinez*, 941 S.W.2d at 912. We express no opinion on whether any of Gifford's allegations other than the alleged misrepresentation about the nature of the dealer's inventory tax could support an injunction under section 17.50 of the DTPA.

15

of these claims in their summary judgment motion. Accordingly, the trial court erred by granting summary judgment as to these claims.[35]

**Conclusion**

The trial court properly granted summary judgment on Gifford's claims that Don Davis misrepresented the nature of the dealer's inventory tax and misrepresented payment of the charge for an extended warranty. However, the trial court improperly granted final summary judgment on the remainder of Gifford's claims because Appellees' motion for summary judgment failed to address them.

Accordingly, we affirm the trial court's judgment in part, reverse the trial court's judgment in part, and remand this cause to the trial court for further proceedings consistent with this opinion.

JOHN CAYCE
CHIEF JUSTICE

PANEL: CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.

DELIVERED: December 11, 2008

---

[35] *See Johnson*, 73 S.W.3d at 204; *Martinez*, 941 S.W.2d at 912.

16