

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00043-CV

_____

PERRY FEAGINS, Appellant

V.

TYLER LINCOLN-MERCURY, INC., D/B/A JACK O'DIAMONDS, Appellee

On Appeal from the 241st Judicial District Court
Smith County, Texas
Trial Court No. 06-2515-C

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

O P I N I O N[1]

When Perry Feagins bought a new Honda Civic from Tyler[2] Lincoln-Mercury, Inc., d/b/a Jack O'Diamonds[3] (Dealer), he opted to have the purchase financed. To accomplish his purchase and financing, Feagins signed a preprinted, multipage "Retail Installment Sale Contract" prepared by Dealer.

The contract sets out the terms of an installment sale by Dealer to Feagins and bears an assignment of the contract by Dealer to Household Automotive Finance Corporation, a third-party lender, to which Feagins was to make payments. Among various terms and disclosures, the contract discloses that the rate of interest, termed the "annual percentage rate," on the financed balance is 12.89 percent. On the contract, a charge of $31.34 is labeled "Dealer's Inventory Tax Paid to Seller," and a charge of $50.00 is labeled "Documentary Fee . . . Paid to Seller."

Feagins sued Dealer, alleging misrepresentations—both affirmative statements of fact and fraudulent nondisclosures—related to the "Dealer's Inventory Tax," the rate of interest, Dealer's gain on the resale of the contract to the third-party lender, and the "Documentary Fee." He sought to

---

[1]Our earlier opinion in this case, issued November 26, 2008, is withdrawn and this opinion is substituted in its place as the opinion of this Court.

[2]This case was transferred to this Court from the Tyler Court of Appeals as part of the Texas Supreme Court's docket equalization program. We are not aware of any conflict between the precedent of the Tyler Court and the precedent of this Court on any issue relevant in this appeal. *See* TEX. R. APP. P. 41.3.

[3]The separate corporation Jack O'Diamonds, Inc., was nonsuited from this case. It appears that the proper party is the corporation Tyler Lincoln-Mercury, Inc., d/b/a Jack O'Diamonds.

establish causes of action that these various affirmative representations and nondisclosures constituted fraud, violated the Texas Finance Code, and triggered a right to injunctive relief under the Texas Deceptive Trade Practices Act (DTPA).

Dealer filed a motion for summary judgment, combining both traditional and no-evidence motions for summary judgment. Dealer argued that there was no evidence to support at least one element of each of the causes of action and that its summary judgment evidence proved conclusively that no cause of action was viable. The trial court granted Dealer's motion.

Feagins contends on appeal[4] that Dealer did not provide summary judgment evidence sufficient to support a traditional motion, that Feagins provided sufficient evidence to defeat a no-evidence motion, and that his DTPA cause of action was not addressed by either motion. Thus, Feagins argues, the judgment should be reversed. We affirm the summary judgment because we hold that (1) summary judgment on the causes of action under the Texas Finance Code was proper, (2) no fact issue exists on the alleged affirmative misrepresentations, and (3) Dealer had no duty regarding the alleged fraudulent nondisclosure.

---

[4]Dealer's motion for summary judgment is not a model of clarity. Counsel are cautioned to always carefully delineate no-evidence and traditional motions for summary judgment, preferably into two separate motions. The response is equally imprecise, and briefing from Feagins merges arguments on multiple theories of recovery together into a single continuous discussion which is often difficult to parse. That difficulty also appears in Feagins' appellate brief. We have attempted to separate and analyze the various issues.

*(1)     Summary Judgment on the Causes of Action Under the Texas Finance Code Was Proper*

First, analyzing the allegations as attempts to state causes of action solely under the Texas Finance Code leads us to conclude the trial court properly included in Dealer's summary judgment the alleged causes of action under the Code.

The "Dealer's Inventory Tax":  An entry on the contract makes a charge for "Dealer's Inventory Tax Paid to Seller" in the amount of $31.34.  Feagins alleges that the entry was misleading because the amount was not a tax and was payable to the State, not by Feagins, but by Dealer. Whether those aspects of that entry are misrepresentations is addressed below, but, as we explain below, those allegations do not make out a violation of the Texas Finance Code.

The Texas Consumer Credit Commissioner issued an advisory letter dated December 22, 1993, and an interpretation dated January 24, 1994.  Both documents conclude that the "Dealer's Inventory Tax" is a tax and that the law authorizes passing it on to a customer along with a "meaningful caption" such as "Dealer's Inventory Tax"—precisely what Dealer did in Feagins' transaction.

Title 4 of the Texas Finance Code—entitled the Texas Credit Title and spanning sections 301.001–371.306—is not violated if the challenged action "conforms to an interpretation of" Title 4 by the Consumer Credit Commissioner under Section 14.108 of the Texas Finance Code, so long as the interpretation is in effect at the time of the challenged act or omission.  TEX. FIN. CODE ANN. § 303.401 (Vernon 2006).  Because of that statutory authority of the Consumer Credit

4

Commissioner and the above-referenced rulings, we hold that the Texas Finance Code was not violated by the entry charging the "Dealer's Inventory Tax."

The Rate of Interest: Feagins alleges, not that the rate of interest exceeded some lawful maximum rate, but that it was misrepresented as being the best rate Feagins could get from the third-party lender. Feagins points to no provision of the Texas Finance Code that would make such a representation a violation of the Texas Finance Code. We find no violation of the Code in this respect.

Dealer's Gain on the Resale of the Contract: Feagins alleges that, from the interest rate margin between that charged on the contract and the effective rate earned by the third-party lender, Dealer reaped a profit of $556.20 and fraudulently concealed that profit from Feagins. Again, Feagins fails to point out any provision of the Texas Finance Code that this practice allegedly violates. In fact, Section 348.301 of the Texas Finance Code applies to this type of transaction and provides that neither a dealer nor a third-party lender has the obligation to disclose to the customer the terms of the assignment of a contract to the third-party lender. We find no violation of the Code in this respect.

The "Documentary Fee": Feagins alleges that the $556.20 Dealer made in selling Feagins' contract to a third-party lender at a premium is a charge to Feagins for "documentation"—citing the deposition of James Bragg—and is, therefore, an improper addition to the maximum $50.00

5

elsewhere charged to Feagins for "Documentary Fee . . . Paid to Seller," thus violating the Texas Finance Code. There are two reasons why we disagree.

First, the charge to Feagins that resulted in this profit to Dealer was contract interest at 12.89 percent, as to which there is no allegation of any violation of the Texas Finance Code. There was no charge to Feagins in the amount of $556.20; that sum was collected by Dealer from the third-party lender as a consequence of the contract resale transaction.

Second, it seems clear to us that the Texas Finance Code contemplates that the "documentary fee" is for documentation needed in every transaction, most notably doing the paperwork to get a certificate of title properly applied for and issued to the buyer. It is chargeable whether or not there is any loan documentation to be done. We find no rule that a "documentary fee" is chargeable only when a vehicle is being purchased by way of installment sale financing. That confirms to us that the "documentary fee" is chargeable even in cash sales. And that, as a matter of law, distinguishes the "documentary fee" from any financing charges or profits related to financing. Though there is summary judgment evidence that Dealer's profit on the resale of Feagins' contract was for preparation of the retail installment sale contract, that charge is not properly characterized as an added "Documentary Fee." We find no violation of the Code in this respect.

*(2)    No Fact Issue Exists on the Alleged Affirmative Misrepresentations*

We now consider the two alleged affirmative misrepresentations—that the "Dealer's Inventory Tax" was a tax Feagins was obligated to pay to the State and that the rate of interest

6

charged to Feagins was the best rate available and, by implication, was the rate being charged Feagins by the third-party lender—to determine if Dealer's summary judgment was proper on the claimed causes of action for affirmative misrepresentations. We hold that, because Feagins' summary-judgment affidavit was struck by the trial court and that action has not been challenged on appeal, the summary judgment must be affirmed in this regard.

A party commits fraud by (1) making a false, material misrepresentation (2) that the party either knows to be false or asserts recklessly without knowledge of its truth (3) with the intent that the misrepresentation be acted upon, (4) and the person to whom the misrepresentation is made acts in reliance upon it (5) and is injured as a result.[5] *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47–48 (Tex. 1998) (op. on reh'g); *Reynolds v. Murphy*, 188 S.W.3d 252, 270 (Tex. App.—Fort Worth 2006, pet. denied) (op. on reh'g).

Dealer argues that Feagins' affidavit should be disregarded because the trial court (by order) struck portions of the affidavit based on Dealer's objections. *See* TEX. R. CIV. P. 166a(f) (to be competent summary judgment evidence, affidavits must be made on personal knowledge, set forth facts that would be admissible in evidence, and affirmatively show affiant is competent to testify to matters stated therein); *see also United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997).

---

[5]Thus, a statement is not fraudulent unless the maker knew it was false when he or she made it or made it recklessly without knowledge of the truth. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990).

7

Dealer also argues that Feagins has not challenged the trial court's ruling on the affidavit and that, therefore, we should not consider the portions of the affidavit struck by the trial court. We agree.

We should address only those issues raised and necessary to a final disposition of the appeal. *See* TEX. R. APP. P. 47.1. It is inappropriate that we take up unassigned error on any party's behalf, absent extraordinary circumstances. Under Rule 38.1 of the Texas Rules of Appellate Procedure, appellants must assign error in a brief to complain of that error. *Lagrone v. John Robert Powers Schools, Inc.*, 841 S.W.2d 34, 37 (Tex. App.—Dallas 1992, no pet.); *see Henry S. Miller Mgmt. Corp. v. Houston State Assocs.*, 792 S.W.2d 128, 134 (Tex. App.—Houston [1st Dist.] 1990, writ denied) (op. on reh'g) ("It is not the proper function of this Court to create arguments for an appellant. We are restricted to addressing the arguments actually raised, not those that might have been raised."); *In re Guardianship of Moon*, 216 S.W.3d 506 (Tex. App.—Texarkana 2007, no pet.); *Aluminum Chems., Inc. v. Bechtel Corp.*, 28 S.W.3d 64, 68 (Tex. App.—Texarkana 2000, no pet).

Three sections of Feagins' affidavit were complained of and struck (or disregarded).

First: "I relied on Defendant's representations to me as presented in the contract and buyer's order that this was a tax I owed."

Second: "I understand from Mr. Bragg's deposition testimony that I was charged an extra $556.20 by the dealership for documenting my purchase."

Third: (the last paragraph of the affidavit) "The dealership told me they would help me arrange financing and told me that Household Automotive Financial Corporation was my creditor

8

in this transaction. They negotiated the rate for me and told me that 12.89% was the best rate available to me from Household Automotive Financial Corporation. If I had known what I now know, that the rate I was approved at was 11.89% which is less than the rate I was told, I would never have agreed to sign the installment contract or purchase the vehicle."

Without those portions of the affidavit, there is no summary-judgment evidence that Dealer represented to Feagins he owed a "Dealer's Inventory Tax" and that the 12.89 percent interest rate on the contract was the best rate he could get from the third-party lender.

Dealer's Inventory Tax: We have discussed what the Texas Finance Code has to say about the Dealer's Inventory Tax and have ruled that the manner in which Dealer handled it in this transaction did not violate the Code. The fact that Feagins cannot show a violation of the Code in this respect would require him to offer at least some summary judgment proof that there was some misrepresentation concerning this item.[6] Without the summary-judgment affidavit on this point, there is no fact issue here.[7]

---

[6]The "Dealer's Inventory Tax" has been a sticky problem since its inception, since motor vehicle dealers, on which the tax was levied, began passing the tax through to their customers and calling it a "tax." This Court discussed those actions in *Alford Chevrolet-Geo v. Jones*, 91 S.W.3d 396, 404 (Tex. App.—Texarkana 2002, pet. denied).

[7]In the no-evidence portion of its motion for summary judgment, Dealer listed the elements of fraud, and first stated without elaboration that there was no evidence of any element of the cause of action. This statement is inadequate to meet the particularity requirements of a motion for summary judgment. *See* TEX. R. CIV. P. 166a(i). Dealer further stated that "plaintiff cannot prove" a false representation, reliance on the representation, or injury resulting therefrom. This misstates the requirements of a no-evidence summary judgment. The question is not whether Feagins can prove his case, the question is whether there is any summary-judgment evidence of specific elements.

The Interest Rate: We reach essentially the same result as to the rate of interest. Dealer argues that it did not misrepresent the interest rate to Feagins, largely because the contract itself states the interest rate as 12.89 percent. This misses Feagins' point, however. His point is that the third-party lender charged, effectively, 11.89 percent, a better rate he should have been able to get directly. Again, however, without his affidavit that he was told he would receive the best rate available to him from Household Automotive Financial Corporation, there is no fact issue about any misrepresentation on the interest rate or any reliance on any misrepresentation.

The available summary-judgment proof set up no fact issue on either of these points.

Feagins also sought injunctive relief under the DTPA. Feagins points out in his appellate brief that Dealer's motion for summary judgment does not refer in any respect to his DTPA allegations; thus, he argues, summary judgment against his claim on that issue was not properly rendered. That is not precisely correct, as the motion does ask, in a single sentence, that the motion for injunction be denied. The sole argument raised under that contention was that, if the fraud claims failed as a matter of law, then no injunctive relief could properly be granted. Since we hold that the summary judgment was proper as to the affirmative misrepresentation causes of action, it was also proper in denying injunctive relief under the DTPA as it may apply to those alleged affirmative misrepresentations.

_____

This portion of the motion does, however, provide the specificity required by the rule.

*(3)      Dealer Had No Duty Regarding the Alleged Fraudulent Nondisclosure*

Feagins alleges that Dealer fraudulently concealed the fact that it made a profit of $556.20 on the resale of his contract to the third-party lender and that, had he known of the profit, he would not have entered into the transaction. Part of the summary-judgment evidence is a "commission" sheet attached to the approval documentation, indicating that a commission was paid to Dealer of the $556.20—approximately half of the resale premium paid to Dealer resulting in a one percentage point difference between the contract rate and the effective interest rate being earned by the third-party lender.

Dealer's sales manager, Bragg, was deposed, and his fairly brief deposition is also part of the summary judgment proof. He was questioned about the Feagins transaction and forms used in it and explained that Dealer had an indirect lending agreement with Household Automotive Financial Corporation. Bragg identified Dealer as the creditor that assisted in arranging the financing. Though his explanation in his deposition was not carefully phrased, Bragg explained the difference between the rates is essentially that the "buy rate" was 11.89 percent, which is the effective rate the third-party lender receives after paying Dealer a premium for the retail installment sales contract, while the actual rate to Feagins was 12.89 percent. A document, titled "Approved-Structure" and generated by the third-party lender, stated that it had approved financing for Feagins at a "Buy Rate" of 11.89 percent. Bragg described the $556.20 as Dealer's commission on the interest rate differential.

11

Dealer argues that there was no evidence that it had any duty to disclose any facts to Feagins, no evidence that it was deliberately silent as to such facts, that Feagins relied on Dealer's nondisclosure, or that Feagins was injured by any nondisclosures. The part of Dealer's argument that is viable is the argument of no duty. As discussed above, there is summary judgment proof that Feagins relied on the completeness and accuracy of the representations made to him and that he signed the contract only because of them, language broad enough to include the concealment of a "side" profit by Dealer on the resale of the contract. Thus, there is neither a lack of any evidence of Feagins' reliance or injury, nor conclusive proof that Feagins did not rely or was not injured. A summary judgment is improper here on the basis of lack of reliance or injury.

This theory of tort liability is based on the concept that a misrepresentation may also consist of the concealment or nondisclosure of a material fact when there is a duty to disclose. *Custom Leasing, Inc. v. Tex. Bank & Trust Co.*, 516 S.W.2d 138, 142 (Tex. 1974); *Reynolds*, 188 S.W.3d at 270. The duty to disclose arises when one party knows that the other party is ignorant of the true facts and does not have an equal opportunity to discover the truth. *Reynolds*, 188 S.W.3d at 270. Whether a duty to disclose exists is a question of law. *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). However, that question of law is dependent on the application of facts, and in the context of a no-evidence summary judgment, we are simply looking to see first if there is any evidence of facts that might support the imposition of such a duty. In the context of a traditional motion, we look to see if Dealer conclusively proved that it had no such duty.

12

Several courts of appeals have held that a general duty to disclose information may arise in an arm's-length business transaction when a party makes a partial disclosure that, although true, conveys a false impression. *See, e.g.*, *McCarthy v. Wani Venture, A.S.*, 251 S.W.3d 573, 585 (Tex. App.—Houston [1st Dist.] 2007, no pet.).[8]

As astutely pointed out by the Fort Worth court, "fraud is usually not discernible by direct evidence and is usually so covert or attendant with such attempts at concealment as to be incapable of proof other than by circumstantial evidence." *W.L. Lindemann Operating Co. v. Strange*, 256 S.W.3d 766, 776 (Tex. App.—Fort Worth 2008, no pet.); *see Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986). Motive, past conduct, and related wrongful acts are thus factors to be considered. *Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 707 (Tex. App.—Fort Worth 2006, pet. denied).

The only real question here is whether Dealer had a duty to speak and nonetheless stayed silent.

The Texas Finance Code explicitly provides that neither a dealer nor a third-party lender has the obligation to disclose to the buyer the terms under which a dealer resells the consumer contract to the lender. *See* TEX. FIN. CODE ANN. § 348.301 (Vernon 2006). Section 348.301 effectively insulates Dealer from any liability for failure to affirmatively disclose the terms of the assignment

---

[8]*Citizens Nat'l Bank v. Allen Rae Invs.*, 142 S.W.3d 459, 476–77 (Tex. App.—Fort Worth 2004, no pet.); *Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. App.—Houston [14th Dist.] 1997, writ denied); *Ralston Purina Co. v. McKendrick*, 850 S.W.2d 629, 636 (Tex. App.—San Antonio 1993, writ denied).

of contract to the third-party lender.  That information, which Dealer was statutorily relieved from an obligation to disclose to Feagins, included the profit of $556.20.  For that reason, summary judgment was proper on any cause of action springing from Dealer's nondisclosure of that profit.

We affirm the summary judgment.


Josh R. Morriss, III
Chief Justice


Date Submitted:     February 4, 2009
Date Decided:     February 5, 2009