Opinion Issued March 5,
2009

 

 

 

 

 



 

 

 

 

 








 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-08-00549-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



LORENA DIBELLO, Appellant

 

V.

 

CHARLIE THOMAS FORD, LTD. D/B/A CHARLIE THOMAS FORD,
Appellee

 

 



On Appeal from County Civil Court at Law No. 3

Harris County, Texas

Trial Court Cause No. 893045








 



O P I N I O N

           Lorena DiBello sued
Charlie Thomas Ford, Ltd., for fraud and violations of the Texas Finance Code,[1]
alleging that its salespeople misrepresented the character of the dealer inventory
tax and the extended-warranty cost in the installment purchase contract for a
new sport utility vehicle.  Charlie Thomas moved for summary judgment, which
the trial court granted.  DiBello appeals, contending that she presented
evidence that creates a fact issue.  We conclude that no evidence supports
DiBello’s claim that the installment contract misrepresented the inventory tax
or the extended warranty cost and therefore affirm the ruling of the trial
court.  

Background

In December 2002, DiBello
purchased a new 2003 Ford Expedition in an installment sale, memorialized in a
retail installment contract.  In connection with the sale, DiBello purchased an
extended warranty for $1,995.00, to be provided by a third party retailer, but
included in the total purchase price of the Expedition.  Also included in the
purchase price was a “dealer’s inventory tax” in the amount of $74.77.  Both
the inventory tax and the extended warranty appeared in a section of the
installment contract entitled “Other Charges Including Amounts Paid to Others
on Your Behalf” and were part of the total amount financed.  This section
contained a caption that says, “Seller may keep part of these amounts.”

Almost four years after
purchasing the Expedition, DiBello sued, claiming that the dealer’s inventory
tax charge stated in the sales contract was fraudulent because no inventory tax
obligation exists for consumers (as opposed to dealers), and thus Charlie
Thomas was not authorized to pass this cost on to its customers.  She also contends
it was fraudulent for Charlie Thomas to represent that a warranty by the third
party service provider cost $1,995.00 when, in fact, the third party receives
only $1,135.00 and Charlie Thomas keeps the other $860.00 as a profit.  Because
these charges were included in the total amount financed, DiBello further
claims that she suffered injury by paying interest on these amounts, which she
contends constitutes a violation of Chapter 348 of the Texas Finance Code.  Tex. Fin. Code Ann. Ch. 348 (Vernon 2006). 
The trial court granted summary judgment.

Discussion

We review a trial court’s
summary judgment de novo.  Valence Operating Co. v. Dorsett, 164
S.W.3d  656, 661 (Tex. 2005); Provident Life Accid. Ins. Co. v. Knott,
128 S.W.3d 211, 215 (Tex. 2003).  Under the traditional standard for summary
judgment, the movant has the burden to show that no genuine issue of material
fact exists and that the trial court should grant a judgment as a matter of
law.  Tex. R. Civ. P. 166a(c);  KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988
S.W.2d 746, 748 (Tex. 1999).  When reviewing a summary judgment, we take as true
all evidence favorable to the nonmovant and indulge every reasonable inference
and resolve any doubts in the nonmovant’s favor.  Dorsett, 164 S.W.3d at
661; Knott, 128 S.W.3d at 215; Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997).  

Traditional summary judgment is
proper only if the movant establishes that there is no genuine issue of
material fact and that the movant is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c). The motion
must state the specific grounds relied upon for summary judgment.  Id.  A defendant moving for traditional summary judgment must conclusively negate at
least one essential element of each of the plaintiff’s causes of action or
conclusively establish each element of an affirmative defense.  Sci.
Spectrum, Inc., 941 S.W.2d at 911.

          After adequate time for
discovery, a party may move for a no-evidence summary judgment on the ground
that no evidence exists to support one or more essential elements of a claim or
defense on which the opposing party has the burden of proof.  Tex. R. Civ. P. 166a(i).  The trial
court must grant the motion unless the nonmovant produces summary judgment
evidence raising a genuine issue of material fact.  Id.  More than a
scintilla of evidence exists if the evidence “would allow reasonable and
fair-minded people to differ in their conclusions.”  Forbes Inc. v. Granada Bioscis., Inc., 124 S.W.3d 167, 172 (Tex. 2003).  When, as here, a summary
judgment does not specify the grounds on which it was granted, we will affirm
the judgment if any one of the theories advanced in the motion is meritorious. Joe
v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 157 (Tex. 2004).

Dealer’s Inventory Tax

DiBello contends that it
was fraudulent for Charlie Thomas to represent that the dealer’s inventory tax
was “a tax that [she] owed,” and that no such tax exists or is authorized under
the Texas Finance Code.  DiBello  argues that the installment contract led her
to believe that the dealer’s inventory tax was a true tax assessed at the time
of purchase, which she owed to the government, and that Charlie Thomas
improperly passed on this tax to her.  In its traditional and no-evidence
summary judgment motions, Charlie Thomas responded that it properly disclosed
the nature of the fee under Texas law.

A dealer’s inventory tax
is not a tax assessed on the purchase of a motor vehicle like a sales tax. 
Instead, an auto dealer pays a yearly tax on the value of the dealer’s
inventory, assessed on January 1 of the following year, equivalent to
one-twelfth of the dealer’s total annual sales volume in the prior year.  Tex. Tax Code Ann. § 23.121
(Vernon 2008).  The tax code requires a dealer to maintain an escrow account
with the local tax assessor-collector into which he makes monthly deposits of
the total unit property tax values assigned to the vehicles sold in that
month.  Id. § 23.122.  Thus, at the time of sale, the dealer assigns
a tax amount to each vehicle equivalent to the amount the dealer must deposit
into the escrow account for that vehicle.  Id.  The escrow funds are
then applied as prepayment on the taxes that will be assessed against the
inventory value on January 1 of the subsequent year.  Id.  The dealer
may not withdraw any funds from the escrow account.  Id.

However, a Texas motor vehicle retailer may pass the dealer’s inventory tax on to the consumer.  The
Texas Finance Code allows a dealer to include “any taxes” as itemized charges
in the amount financed in retail sales contracts.  Tex. Fin. Code Ann. § 348.005(2) (Vernon 2006).  In
1994, the Texas Consumer Credit Commissioner interpreted “any taxes” as used in
the statute to include the unit property tax value as part of the cash price of
the vehicle, shown as an itemized charge in an installment contract, as long as
the amount bears “a clear and meaningful caption such as ‘Dealer’s Inventory
Tax.’”  19 Tex. Reg. 655 (Jan. 24, 1994).  Such an action does not violate
Title 4 of the Texas Finance Code, which includes section 348.005, because it
“conforms to an interpretation of” Title 4 by the Consumer Credit Commissioner
under Section 14.108 of the Texas Finance Code, if the interpretation is in
effect at the time of the challenged act or omission.  Tex. Fin. Code Ann. § 303.401 (Vernon 2006).  As Charlie
Thomas included the charge in the contract together with a caption marking it
as the “dealer’s inventory tax,” its action complied with the Commissioner’s
interpretation and thus does not violate the Texas Finance Code.  See
Feagins v. Tyler Lincoln Mercury, Inc., No. 06-08-00043-CV, 2009 WL 259353,
at *2 (Tex. App.—Texarkana 2008, no pet. h.) (holding that Texas Finance Code
was not violated by charging “Dealer’s Inventory Tax” that is captioned in
compliance with Consumer Credit Commissioner’s opinion); Gifford v. Don
Davis Auto, Inc., No. 02-07-064-CV, 2008 WL 5194314, at *2 (Tex. App.—Fort
Worth 2008, no pet. h.) (holding that the Texas Finance Code authorizes dealers
to include a dealer’s inventory tax as an itemized charge in an installment
contract). 

          We further conclude that
DiBello has not raised a fact issue as to whether Charlie Thomas committed
fraud regarding the tax.  The elements of common law fraud are:  (1) a material
representation that was false when made; (2) when the representation was made,
the speaker knew it was false or made it recklessly as a positive assertion
without any knowledge of its truth; (3) the speaker made the representation
with the intent that the other party should act upon it; (4) the party actually
and justifiably relied on the representation; and (5) thereby suffered injury. 
Ernst Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001); Miller v. Raytheon Aircraft Co., 229 S.W.3d 358, 380–81 (Tex. App.—Houston [1st Dist.] 2007, no pet.).  DiBello claims that the summary judgment
evidence establishes that the misrepresentations concerning the “fictitious
tax” induced her to enter into the sales contract.  As summary judgment
evidence, DiBello offered the sales contract and her affidavit.  In her
affidavit, DiBello states, “I relied on Defendant’s representations to me as
presented in the contract and buyer’s order that [the dealer’s inventory
tax] was a tax I owed.  If I had known that this was not a tax I owed, I would
never have agreed to pay it or finance the payment of it in my installment
purchase . . . and would never have signed this contract.” (Emphasis added.) 
This is the very language, however, approved by the Consumer Credit
Commissioner.  The issue DiBello raises is whether the Commissioner’s language,
without more, may constitute evidence of a misrepresentation.

Both the Texarkana and Fort Worth courts have addressed this question in recent opinions.  In Feagins v. Tyler
Lincoln Mercury, the Texarkana Court of Appeals affirmed summary judgment
on a similar claim, holding that the dealer invoice reflecting an inventory tax
was insufficient to raise a fact issue where the plaintiff’s affidavit claiming
misrepresentation had been struck by the trial court.  Feagins, 2009 WL
259353 at *3.  The Fort Worth Court of Appeals held in Gifford v. Don Davis
Auto that Gifford’s subjective belief that he owed the tax based on his
interpretation of the meaning of the words “dealer’s inventory tax paid to
seller” was insufficient to raise a fact issue because the dealer’s installment
contract followed the model installment contract provided by the Consumer
Credit Commission and included the term “Dealer’s Inventory Tax Paid to Seller.”
 Gifford, 2008 WL 5194314 at *4.  The dealer thus did not misrepresent
the nature of the dealer’s inventory tax or Gifford’s obligation to pay it.  Id.

We agree with the
reasoning of the Fort Worth Court of Appeals.  Like in Gifford, here the
installment sales contract includes the term “Dealer’s Inventory Tax Paid to
Seller.”  DiBello cites nothing other than the language in the contract to
indicate a misrepresentation by the dealer.  Following the holding in Gifford,
we hold that, without other evidence of misrepresentation, the dealer’s
compliance with the code does not support a claim for fraud. 

Extended Warranty

          DiBello also contends that
the installment purchase contract fraudulently represents that Charlie Thomas
would pay $1,995.00 to a third party warranty provider for the extended
warranty she purchased with her vehicle.  Instead of passing that amount on to
the third party as represented, DiBello alleges that Charlie Thomas kept
$860.00 of the $1,995.00.  In support of this argument, DiBello relies on a
document attached to her response to Charlie Thomas’s motion for summary
judgment that indicates a “sale amount” of $1,995.00 and a “dealer gross” of
$860.00 on the extended warranty.  DiBello argues that she relied on Charlie Thomas’s
representations that “the charge for the warranty was being applied as
represented in the contract.”  But this contention is belied by the installment
sales contract, where the charge for the extended warranty appears in the
itemized section entitled “Other Charges Including Amounts Paid to Others on
Your Behalf.”  Under this section heading appears a parenthetical which states,
“Seller may keep part of these amounts.”  DiBello essentially asks us to find
it fraudulent for a retailer to keep a profit on goods or services without
disclosing to a purchaser what portion of the total sale price is profit.  

In Gifford, the
plaintiff asserted a similar claim, arguing that the dealer fraudulently
represented that the amount of the warranty was being paid to a third party
provider, but that the dealer, in fact, never paid the third party.  Gifford,
2008 WL 5194314 at *4.  The Court of Appeals affirmed summary judgment for the
dealer, holding that the plaintiff failed to present any evidence demonstrating
that the dealer failed to pay the third party.  Id.  Here, the sales
document attached to DiBello’s response is some evidence that Charlie Thomas
did not pay the full amount to a third party.  However, DiBello fails to
present any evidence that Charlie Thomas represented to her that it would pay
the full amount to the third party.  Rather, she offers the sales contract,
which provides that the “seller may keep part of these amounts.”

We hold that DiBello has
not produced summary judgment evidence supporting a claim for misrepresentation
of the distribution of the purchase price for the extended warranty.






Conclusion

We conclude that DiBello
has failed to raise any issue of material fact in support of the
misrepresentation element of her common law fraud and Texas Finance Code
claims, and thus the trial court properly granted summary judgment.  We
therefore affirm the judgment of the trial court.

 

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Judges Taft, Bland,
and Sharp.

 









[1]
Dibello also appeals the trial court’s summary
judgment on her Texas Deceptive Trade Practices Act claim.  However, Dibello
fails to brief this claim on appeal with any reference to the statute, legal
authority argument, or summary judgment evidence.  Thus, we hold she has waived
this issue on appeal.