**Lorena DiBELLO, Appellant,**

v.

**CHARLIE THOMAS FORD, LTD. d/b/a Charlie Thomas Ford, Appellee.**

No. 01–08–00549–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 5, 2009.

Rehearing En Banc Overruled April 23, 2009.

James H. Owen, Athens, TX, for Appellant.

George A. Kurisky Jr., Johnson, DeLuca, Kennedy & Kurisky, P.C., Houston, TX, for Appellee.

Panel consists of Judges TAFT, BLAND, and SHARP.

## OPINION

JANE BLAND, Justice.

Lorena DiBello sued Charlie Thomas Ford, Ltd., for fraud and violations of the Texas Finance Code,[1] alleging that its salespeople misrepresented the character of the dealer inventory tax and the extended-warranty cost in the installment purchase contract for a new sport

---

1. DiBello also appeals the trial court's summary judgment on her Texas Deceptive Trade Practices Act claim. However, DiBello fails to brief this claim on appeal with any reference to the statute, legal authority argument, or summary judgment evidence. Thus, we hold she has waived this issue on appeal.

utility vehicle. Charlie Thomas moved for summary judgment, which the trial court granted. DiBello appeals, contending that she presented evidence that creates a fact issue. We conclude that no evidence supports DiBello's claim that the installment contract misrepresented the inventory tax or the extended warranty cost and therefore affirm the ruling of the trial court.

## Background

In December 2002, DiBello purchased a new 2003 Ford Expedition in an installment sale, memorialized in a retail installment contract. In connection with the sale, DiBello purchased an extended warranty for $1,995.00, to be provided by a third party retailer, but included in the total purchase price of the Expedition. Also included in the purchase price was a "dealer's inventory tax" in the amount of $74.77. Both the inventory tax and the extended warranty appeared in a section of the installment contract entitled "Other Charges Including Amounts Paid to Others on Your Behalf" and were part of the total amount financed. This section contained a caption that says, "Seller may keep part of these amounts."

Almost four years after purchasing the Expedition, DiBello sued, claiming that the dealer's inventory tax charge stated in the sales contract was fraudulent because no inventory tax obligation exists for consumers (as opposed to dealers), and thus Charlie Thomas was not authorized to pass this cost on to its customers. She also contends it was fraudulent for Charlie Thomas to represent that a warranty by the third party service provider cost $1,995.00 when, in fact, the third party receives only $1,135.00 and Charlie Thomas keeps the other $860.00 as a profit. Because these charges were included in the total amount financed, DiBello further claims that she suffered injury by paying interest on these

amounts, which she contends constitutes a violation of Chapter 348 of the Texas Finance Code. TEX. FIN.CODE ANN. Ch. 348 (Vernon 2006). The trial court granted summary judgment.

## Discussion

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005); *Provident Life Accid. Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). Under the traditional standard for summary judgment, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant a judgment as a matter of law. TEX.R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Dorsett,* 164 S.W.3d at 661; *Knott,* 128 S.W.3d at 215; *Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997).

Traditional summary judgment is proper only if the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). The motion must state the specific grounds relied upon for summary judgment. *Id.* A defendant moving for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc.,* 941 S.W.2d at 911.

After adequate time for discovery, a party may move for a no-evidence summary judgment on the ground that no evidence exists to support one or more

essential elements of a claim or defense on which the opposing party has the burden of proof. TEX.R. CIV. P. 166a(i). The trial court must grant the motion unless the nonmovant produces summary judgment evidence raising a genuine issue of material fact. *Id.* More than a scintilla of evidence exists if the evidence "would allow reasonable and fair-minded people to differ in their conclusions." *Forbes Inc. v. Granada Bioscis., Inc.,* 124 S.W.3d 167, 172 (Tex.2003). When, as here, a summary judgment does not specify the grounds on which it was granted, we will affirm the judgment if any one of the theories advanced in the motion is meritorious. *Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 157 (Tex.2004).

*Dealer's Inventory Tax*

■ DiBello contends that it was fraudulent for Charlie Thomas to represent that the dealer's inventory tax was "a tax that [she] owed," and that no such tax exists or is authorized under the Texas Finance Code. DiBello argues that the installment contract led her to believe that the dealer's inventory tax was a true tax assessed at the time of purchase, which she owed to the government, and that Charlie Thomas improperly passed on this tax to her. In its traditional and no-evidence summary judgment motions, Charlie Thomas responded that it properly disclosed the nature of the fee under Texas law.

A dealer's inventory tax is not a tax assessed on the purchase of a motor vehicle like a sales tax. Instead, an auto dealer pays a yearly tax on the value of the dealer's inventory, assessed on January 1 of the following year, equivalent to one-twelfth of the dealer's total annual sales volume in the prior year. TEX. TAX CODE ANN. § 23.121 (Vernon 2008). The tax code requires a dealer to maintain an escrow account with the local tax assessor-collector into which he makes monthly deposits of the total unit property tax values assigned to the vehicles sold in that month. *Id.* § 23.122. Thus, at the time of sale, the dealer assigns a tax amount to each vehicle equivalent to the amount the dealer must deposit into the escrow account for that vehicle. *Id.* The escrow funds are then applied as prepayment on the taxes that will be assessed against the inventory value on January 1 of the subsequent year. *Id.* The dealer may not withdraw any funds from the escrow account. *Id.*

However, a Texas motor vehicle retailer may pass the dealer's inventory tax on to the consumer. The Texas Finance Code allows a dealer to include "any taxes" as itemized charges in the amount financed in retail sales contracts. TEX. FIN.CODE ANN. § 348.005(2) (Vernon 2006). In 1994, the Texas Consumer Credit Commissioner interpreted "any taxes" as used in the statute to include the unit property tax value as part of the cash price of the vehicle, shown as an itemized charge in an installment contract, as long as the amount bears "a clear and meaningful caption such as 'Dealer's Inventory Tax.'" 19 Tex. Reg. 655 (Jan. 24, 1994). Such an action does not violate Title 4 of the Texas Finance Code, which includes section 348.005, because it "conforms to an interpretation of" Title 4 by the Consumer Credit Commissioner under Section 14.108 of the Texas Finance Code, if the interpretation is in effect at the time of the challenged act or omission. TEX. FIN.CODE ANN. § 303.401 (Vernon 2006). As Charlie Thomas included the charge in the contract together with a caption marking it as the "dealer's inventory tax," its action complied with the Commissioner's interpretation and thus does not violate the Texas Finance Code. *See Feagins v. Tyler Lincoln–Mercury, Inc.,* 277 S.W.3d 450, 453–55 (Tex.App.-Texarkana 2008, no pet. h.) (holding that Texas Finance Code was not violated by

charging "Dealer's Inventory Tax" that is captioned in compliance with Consumer Credit Commissioner's opinion); *Gifford v. Don Davis Auto, Inc.,* 274 S.W.3d 890, 893–94 (Tex.App.-Fort Worth 2008, no pet. h.) (holding that the Texas Finance Code authorizes dealers to include a dealer's inventory tax as an itemized charge in an installment contract).

■ We further conclude that DiBello has not raised a fact issue as to whether Charlie Thomas committed fraud regarding the tax. The elements of common law fraud are: (1) a material representation that was false when made; (2) when the representation was made, the speaker knew it was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the speaker made the representation with the intent that the other party should act upon it; (4) the party actually and justifiably relied on the representation; and (5) thereby suffered injury. *Ernst Young, L.L.P. v. Pac. Mut. Life Ins. Co.,* 51 S.W.3d 573, 577 (Tex.2001); *Miller v. Raytheon Aircraft Co.,* 229 S.W.3d 358, 380–81 (Tex.App.-Houston [1st Dist.] 2007, no pet.). DiBello claims that the summary judgment evidence establishes that the misrepresentations concerning the "fictitious tax" induced her to enter into the sales contract. As summary judgment evidence, DiBello offered the sales contract and her affidavit. In her affidavit, DiBello states, "I relied on Defendant's representations to me *as presented in the contract* and buyer's order that [the dealer's inventory tax] was a tax I owed. If I had known that this was not a tax I owed, I would never have agreed to pay it or finance the payment of it in my installment purchase . . . and would never have signed this contract." (Emphasis added.) This is the very language, however, approved by the Consumer Credit Commissioner. The issue DiBello raises is whether the Com-

missioner's language, without more, may constitute evidence of a misrepresentation.

Both the Texarkana and Fort Worth courts have addressed this question in recent opinions. In *Feagins v. Tyler Lincoln Mercury,* the Texarkana Court of Appeals affirmed summary judgment on a similar claim, holding that the dealer invoice reflecting an inventory tax was insufficient to raise a fact issue where the plaintiff's affidavit claiming misrepresentation had been struck by the trial court. *Feagins,* 277 S.W.3d at 455. The Fort Worth Court of Appeals held in *Gifford v. Don Davis Auto* that Gifford's subjective belief that he owed the tax based on his interpretation of the meaning of the words "dealer's inventory tax paid to seller" was insufficient to raise a fact issue because the dealer's installment contract followed the model installment contract provided by the Consumer Credit Commission and included the term "Dealer's Inventory Tax Paid to Seller." *Gifford,* 274 S.W.3d at 895–96. The dealer thus did not misrepresent the nature of the dealer's inventory tax or Gifford's obligation to pay it. *Id.*

We agree with the reasoning of the Fort Worth Court of Appeals. Like in *Gifford,* here the installment sales contract includes the term "Dealer's Inventory Tax Paid to Seller." DiBello cites nothing other than the language in the contract to indicate a misrepresentation by the dealer. Following the holding in *Gifford,* we hold that, without other evidence of misrepresentation, the dealer's compliance with the code does not support a claim for fraud.

*Extended Warranty*

■ DiBello also contends that the installment purchase contract fraudulently represents that Charlie Thomas would pay $1,995.00 to a third party warranty provider for the extended warranty she purchased with her vehicle. Instead of passing that amount on to the third party as

represented, DiBello alleges that Charlie Thomas kept $860.00 of the $1,995.00. In support of this argument, DiBello relies on a document attached to her response to Charlie Thomas's motion for summary judgment that indicates a "sale amount" of $1,995.00 and a "dealer gross" of $860.00 on the extended warranty. DiBello argues that she relied on Charlie Thomas's representations that "the charge for the warranty was being applied as represented in the contract." But this contention is belied by the installment sales contract, where the charge for the extended warranty appears in the itemized section entitled "Other Charges Including Amounts Paid to Others on Your Behalf." Under this section heading appears a parenthetical which states, "Seller may keep part of these amounts." DiBello essentially asks us to find it fraudulent for a retailer to keep a profit on goods or services without disclosing to a purchaser what portion of the total sale price is profit.

In *Gifford,* the plaintiff asserted a similar claim, arguing that the dealer fraudulently represented that the amount of the warranty was being paid to a third party provider, but that the dealer, in fact, never paid the third party. *Gifford,* 274 S.W.3d at 895–96. The Court of Appeals affirmed summary judgment for the dealer, holding that the plaintiff failed to present any evidence demonstrating that the dealer failed to pay the third party. *Id.* Here, the sales document attached to DiBello's response is some evidence that Charlie Thomas did not pay the full amount to a third party. However, DiBello fails to present any evidence that Charlie Thomas represented to her that it would pay the full amount to the third party. Rather, she offers the sales contract, which provides that the "seller may keep part of these amounts."

We hold that DiBello has not produced summary judgment evidence supporting a claim for misrepresentation of the distribution of the purchase price for the extended warranty.

## Conclusion

We conclude that DiBello has failed to raise any issue of material fact in support of the misrepresentation element of her common law fraud and Texas Finance Code claims, and thus the trial court properly granted summary judgment. We therefore affirm the judgment of the trial court.