**Deleaser L. RIVERS, Appellant**

v.

**CHARLIE THOMAS FORD, LTD. d/b/a Charlie Thomas Ford, Appellee.**

**No. 14–08–00229–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

June 4, 2009.

James H. Owen, Athens, TX, for appellants.

George A. Kurisky, Houston, TX, for appellees.

Panel consists of Chief Justice HEDGES and Justices ANDERSON and SEYMORE.

## OPINION

JOHN S. ANDERSON, Justice.

This is a summary judgment case. Appellant, Deleaser L. Rivers, filed suit against appellee, Charlie Thomas Ford, Ltd. d/b/a Charlie Thomas Ford, asserting numerous causes of action arising out of her purchase of a 2002 Ford Mustang. Eventually, the trial court disposed of ap-

pellant's causes of action by granting of two motions for summary judgment filed by appellee which in turn were incorporated into an amended final judgment. Finding no error, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On or about July 27, 2002, appellant purchased a 2002 Ford Mustang from appellee. To make the purchase, appellant was required to finance a large part of the purchase price. To complete the purchase, appellant signed a Purchase Order and Retail Installment Agreement (the "Contract"). Pursuant to the Contract, appellant agreed to a cash sale price for the Mustang of $26,981.62. As part of her purchase of the Mustang, appellant agreed to buy an extended warranty from ESP Premium for $1,825.00 and guaranteed auto protection ("GAP") insurance for $420.11.[1]

In addition to the above, the Contract listed several itemized charges. These itemized charges included sales tax, dealer's inventory tax, license and/or registration fees, certificate of title fees, inspection fees, deputy service fee, and a documentary fee paid to the seller. There were also "Federal Truth–in–Lending Disclosures" which disclosed the annual percentage rate, finance charge, amount financed, total of payments, and the total sale price of the Mustang. There was also an itemization of the amount financed. Paragraph 4 of this section is titled: "Other Charges Including Amounts Paid to Others on Your Behalf (Seller may keep part of these amounts)" and it lists the $1,825.00 paid by appellant for the extended warranty and the $420.11 paid by appellant for the GAP insurance. Finally, the Contract contained

---

1. GAP insurance is insurance to reimburse the retail buyer for the amount computed by subtracting the proceeds of the insured's basic collision policy on the motor vehicle from the amount owed on the vehicle if the vehicle has been rendered a total loss. Tex. Fin.Code Ann. § 348.208(b)(4) (Vernon 2006).

a notice to the buyer to not sign the Contract before reading it.

Eventually, appellant became dissatisfied with the terms of her purchase of the Mustang. She cancelled the GAP insurance and received a partial refund of the premium she had paid. Still apparently dissatisfied, appellant filed suit alleging appellee committed fraud because the Contract misrepresented (1) the nature of the itemized charges; (2) to whom the charges would be paid; and (3) who was obligated to pay certain itemized charges. Appellant also alleged appellee violated the Texas Finance Code by (1) failing to make the disclosures in the Contract required under the Finance Code; (2) overstating the amount financed and annual percentage rate in the Contract while understating the finance charge; and (3) including a charge in the Contract for the dealer's inventory tax, which appellant alleged was not authorized by the Finance Code. Appellant sought statutory fines, penalties, damages, punitive damages, and attorney's fees. Finally, appellant sought injunctive relief, but not damages, pursuant to section 17.50 of the Deceptive Trade Practices and Consumer Protection Act ("DTPA").

On March 20, 2007, appellee moved for summary judgment on each of appellant's then existing causes of action. On March 26, 2007, appellee filed its first supplemental motion for summary judgment adding additional arguments in support of its motion.

On April 4, 2007 appellant filed her First Amended Petition in which she clarified the facts underlying her causes of action, added a cause of action alleging appellee violated the Texas Finance Code when it sold appellant GAP insurance and deleted the paragraph seeking an injunction pursuant to the DTPA.[2] Appellant filed her summary judgment response on June 21, 2007. The only summary judgment evidence attached to appellant's response was appellant's affidavit and a copy of the Contract.

The summary judgment hearing occurred on June 28, 2007. The parties agree that during the June 28 hearing, the trial court announced in open court that summary judgment was granted on appellant's claims that appellee had violated the Texas Finance Code, Texas Insurance Code, and committed fraud by (1) misrepresenting the amount appellee paid ESP Premium for the extended warranty; (2) overstating the cash price of the Mustang; and (3) overstating the amount of the annual percentage rate at which appellant's credit had been approved by the finance company. The parties also agree the trial court took under advisement appellant's claim that appellee violated the Texas Finance Code and committed fraud by including a charge for the dealer's inventory tax in the Contract. Finally, appellant's GAP insurance claim was not addressed by appellee's motion. No written order was entered at that time.

On July 26, 2007, appellant filed her Second Amended Original Petition.[3] In her second amended original petition, appellant revised her GAP insurance cause of action from selling the insurance without a license, to selling the insurance in violation of requirements set forth in section 4055.014 of the Texas Insurance Code. Ap-

---

2. This First Amended Original Petition was her live pleading when the trial court heard appellee's first motion for summary judgment on June 28, 2007.

3. Appellant styled the July 26, 2007 amended pleading as "Plaintiff's First Amended Original Petition." Because appellant had previously filed a First Amended Original Petition, we refer to the July 26, 2007 petition as the Second Amended Original Petition.

pellant also brought back her request for an injunction pursuant to section 17.50 of the DTPA.

On August 22, 2007, appellee filed its first amended second motion for summary judgment on appellant's remaining causes of action, including her DTPA claim. The presiding judge of the 190th District Court left the bench without ruling on the pending dealer's inventory tax issue or hearing appellee's second motion for summary judgment. On January 17, 2008, the judge of the 189th District Court heard appellee's second motion for summary judgment, granted part of the motion, and entered an order that appellant take nothing on her claims that appellee sold GAP insurance in violation of the Texas Finance Code and Texas Insurance Code and committed fraud by doing so. The 189th District Court trial judge also ruled on the pending dealer's inventory tax issue and ordered that appellant take nothing on that claim as well. The January 17, 2008 order did not address the DTPA claim.

Following a pre-trial conference, on February 23, 2008, the new judge of the 190th District Court, in response to an Agreed Motion to Enter Amended Final Judgment, signed an Amended Final Judgment disposing of all pending claims, including the DTPA claim. This appeal followed.

### DISCUSSION

In a single issue, appellant challenges the trial court's Amended Final Judgment only on appellant's claims that appellee (1) committed fraud and violated the Texas Finance Code by allegedly misrepresenting the amount appellee paid to ESP Premium, the extended warranty company;

(2) committed fraud and violated the Texas Finance Code by misrepresenting the nature of the dealer inventory tax and who was responsible for paying it; and (3) should be permanently enjoined from the above specified conduct because it violates section 17.50 of the DTPA. We address each claim in turn.[4]

### I. The standard of review.

This case involves summary judgment motions asserting both no-evidence and traditional grounds. In a traditional motion for summary judgment, the movant has the burden to show there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). In determining whether there is a genuine fact issue precluding summary judgment, evidence favorable to the non-movant is taken as true and the reviewing court makes all reasonable inferences and resolves all doubts in the nonmovant's favor. *Id.* at 548–49. A defendant who conclusively negates at least one of the essential elements of a plaintiff's cause of action is entitled to summary judgment on that claim. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex.2004). Only when the defendant establishes its right to summary judgment, does the burden shift to the plaintiff to come forward with competent, controverting evidence raising a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995).

In a no-evidence motion for summary judgment, the movant must specifically state the elements as to which there is no evidence. *Walker v. Thomasson Lumber Co.*, 203 S.W.3d 470, 473–74 (Tex.App.-

---

4. Because appellant has not challenged the trial court's Amended Final Judgment on appellant's remaining causes of action, appellant has waived any potential error on those causes of action and those portions of the Amended Final Judgment are affirmed. *Jacobs v. Satterwhite*, 65 S.W.3d 653, 655–56 (Tex.2001).

Houston [14th Dist.] 2006, no pet.). The trial court must grant the motion unless the nonmovant produces summary judgment evidence raising a genuine issue of material fact on each of the challenged elements. Tex.R. Civ. P. 166a(i). However, the nonmovant is not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex.2008).

A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Mathis v. Restoration Builders, Inc.*, 231 S.W.3d 47, 50 (Tex.App.-Houston [14th Dist.] 2007, no pet.). We review the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex.2005). We sustain a no-evidence summary judgment if (1) there is a complete absence of proof of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Walker*, 203 S.W.3d at 474. Less than a scintilla of evidence exists when the evidence offered to prove a vital fact is so weak so as to do no more than create a mere surmise or suspicion of its existence and, in legal effect, is no evidence. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex.2004). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions as to the existence of the vital fact. *Id.*

We review a trial court's summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). When a party moves for summary judgment on both traditional and no-evidence grounds and the trial court does not specify which it granted, we can uphold the summary judgment on either ground. *Taylor v. Carley*, 158 S.W.3d 1, 8 (Tex. App.-Houston [14th Dist.] 2004, pet. denied).

## II. Did the trial court err when it granted appellee's motions for summary judgment?

### A. The trial court properly granted appellee's motion for summary judgment on appellant's fraud cause of action based on the extended warranty charge.

Appellant alleged appellee committed fraud by affirmative misrepresentation as well as by non-disclosure when it included the $1,825.00 warranty charge as an itemized cost in the Contract. According to appellant, appellee affirmatively misrepresented that it would pay the full $1,825.00 on behalf of appellant to ESP Premium for an extended warranty. Appellant also contends appellee committed fraud by nondisclosure because appellee had a duty to disclose all facts regarding the warranty payment because appellee made a partial disclosure which conveyed a false impression to appellant.

■ A party commits fraud by (1) making a false, material misrepresentation (2) that the party either knows to be false or asserts recklessly without knowledge of its truth (3) with the intent that the misrepresentation be acted upon, (4) and the person to whom the misrepresentation is made acts in reliance upon it, and (5) is injured as a result. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex.1998). For there to be actionable fraud based

upon non-disclosure, there must be a duty to disclose. *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex.2001). Whether a duty exists is a question of law. *Id.* While the Texas Supreme Court has not recognized a fraud cause of action based on the failure to disclose, we have previously recognized there is a duty to speak when a party has made a partial disclosure and thereby conveys a false impression. *Anderson, Greenwood & Co. v. Martin*, 44 S.W.3d 200, 213 (Tex.App.-Houston [14th Dist.] 2001, pet. denied).

■ On appeal, appellant contends her summary judgment evidence raised a fact issue on each challenged element of her fraud causes of action based on the warranty charge, and therefore the trial court erred when it granted appellee's motion for summary judgment. In response, appellee asserts it was entitled to summary judgment because appellant failed to produce summary judgment evidence creating a fact issue on each challenged element of appellant's extended warranty fraud causes of action. We agree with appellee.

The only evidence appellant attached to her summary judgment response relevant to the warranty charge payment issue was her affidavit, in which she states: "[appellee] kept some or all of this money." This is a factual conclusion and is legally insufficient to create a fact issue on the false representation element of appellant's fraud cause of action. *See Estate of Gajewsky v. John Hancock Life Ins. Co.*, No. 14–04–00748–CV, 2005 WL 1017628, at *3 (Tex. App.-Houston [14th Dist.] May 3, 2005, no pet.) (mem.op.) (holding that an affidavit comprised of conclusory statements with no attempt to show a factual basis for the conclusions is insufficient to defeat a no evidence summary judgment motion). Therefore, appellant failed to produce more than a scintilla of evidence that ap-

pellee did not pay the entire $1,825.00 to the extended warranty company.

The same holds true on appellant's fraud by non-disclosure cause of action. The Contract disclosed the following: "Other Charges Including Amounts Paid to Others on Your Behalf (Seller may keep part of these amounts)." Under this section of the Contract appellee went on to list the $1,825.00 extended warranty payment. Appellant, who affirmatively stated in her affidavit that she relied only on the Contract, has failed to refer this court to any summary judgment evidence demonstrating appellee did anything different from what they represented they would do. Since appellant did not meet her summary judgment burden to produce more than a scintilla of evidence that representations in the Contract created a false impression, we hold appellant's summary judgment evidence is insufficient to support her claim that appellee breached a duty to make a full disclosure to correct a false impression.

Because appellant failed to meet her summary judgment burden of producing more than a scintilla of evidence on the above elements of her extended warranty fraud causes of action, we affirm the Amended Final Judgment as to appellant's fraud causes of action based on the extended warranty. *See Gifford v. Don Davis Auto, Inc.*, 274 S.W.3d 890, 896 (Tex.App.-Fort Worth 2008, no pet.).

**B. The trial court properly granted appellee's motion for summary judgment on appellant's Texas Finance Code cause of action based on the extended warranty charge.**

■ Appellant also contends the trial court erred when it granted summary judgment on her cause of action alleging appellee violated section 348.005 of the Texas Finance Code, because, according to appellant, the warranty was fictitious and

therefore the warranty charge should not have been included in the amount financed, which results in the amount financed and the finance charge being misrepresented.[5] In response, appellee asserts appellant's contention is without merit as appellant once again failed to produce more than a scintilla of summary judgment evidence demonstrating appellee made a false representation regarding the extended warranty charge, the amount financed, and the amount of the finance charge. Once again, we agree with appellee.

The only evidence appellant attached to her summary judgment response relevant to the warranty charge payment issue was her affidavit, which provides in relevant part:

> In connection with the transaction, I was told that I was borrowing money to pay for an extended warranty on my vehicle and that the sum of $1,825.00 would be paid to ESP Premium for my extended warranty. [Appellee] kept some or all of this money. If I had known that $1,825.00 was not really being paid to ESP Premium for the extended service plan, as I was told in the contract, I would not have agreed to purchase it, and I would not have agreed to purchase the vehicle from [appellee].

Excluding the conclusory statement addressed above, this portion of appellant's affidavit constitutes no evidence that the extended warranty at issue here was fictitious or that appellee withheld some or all of the $1,825.00 from the extended warranty company. As a result, appellant did not produce summary judgment evidence raising a fact issue that appellee violated the

Texas Finance Code by (1) including an itemized charge in the Contract for a fictitious extended warranty, (2) misrepresenting the amount financed, or (3) misrepresenting the amount of the finance charge. Therefore, we affirm the Amended Final Judgment as to appellant's Texas Finance Code cause of action based on the extended warranty.

**C. The trial court properly granted appellee's motion for summary judgment on appellant's Texas Finance Code and fraud causes of action based on the Dealer Inventory Tax.**

■ Appellant also alleged appellee violated the Texas Finance Code and committed fraud, both through affirmative misrepresentation and non-disclosure, when it included a $62.49 Dealer Inventory Tax charge in the Contract. Appellant contends on appeal that the trial court erred when it granted appellee summary judgment on these causes of action. We disagree.

The Contract included an itemized charge of $62.49 for "Dealer's Inventory Tax Paid to Seller." According to appellant this charge violates the Texas Finance Code because it was not actually a tax, but a payment into an escrow account that would ultimately be used to pay the inventory tax owed not by appellant, but by appellee. The Texarkana Court of Appeals recently addressed this very issue in *Feagins v. Tyler Lincoln–Mercury, Inc.*, 277 S.W.3d 450, 453–54 (Tex.App.-Texarkana, no pet. h.) (op. on rehearing). As in this case, the plaintiff in *Feagins* alleged the defendant dealer violated the Texas

---

5. Section 348.005 of the Texas Finance Code provides in relevant part: "An amount in a retail installment contract is an itemized charge if the amount is not included in the cash price and is the amount of: ... (4) charges authorized for insurance, service contracts, or warranties by Subchapter C." Tex.

Fin.Code Ann. § 348.005(4) (Vernon 2006). Section 348.208(b) of Subchapter C provides in relevant part: "A retail installment contract may include as a separate charge an amount for: ... (5) a warranty or service contract relating to a motor vehicle." *Id.* at § 348.208(b)(5).

Finance Code by including a charge for a Dealer's Inventory Tax in the itemized charges of the plaintiff's installment contract to purchase a vehicle. *Id.* at 453. The Texarkana court addressed this allegation as follows:

The Texas Consumer Credit Commissioner issued an advisory letter dated December 22, 1993, and an interpretation dated January 24, 1994. Both documents conclude that the "Dealer's Inventory Tax" is a tax and that the law authorizes passing it on to a customer along with a "meaningful caption" such as "Dealer's Inventory Tax"—precisely what Dealer did in Feagins' transaction.

Title 4 of the Texas Finance Code-entitled the Texas Credit Title and spanning sections 301.001–371.306-is not violated if the challenged action "conforms to an interpretation of" Title 4 by the Consumer Credit Commissioner under Section 14.108 of the Texas Finance Code, so long as the interpretation is in effect at the time of the challenged act or omission. Tex. Fin.Code Ann. § 303.401 (Vernon 2006). Because of that statutory authority of the Consumer Credit Commissioner and the above-referenced rulings, we hold that the Texas Finance Code was not violated by the entry charging the "Dealer's Inventory Tax."

*Id.* at 453–54.

We find the Texarkana court's reasoning persuasive and adopt it here. Because appellee disclosed the inventory tax to appellant using language approved by the Texas Consumer Credit Commissioner, we hold appellee did not violate the Texas Finance Code by including the $62.49 inventory tax in the amount financed. See *id., DiBello v. Charlie Thomas Ford, Ltd.,* 288 S.W.3d 118, 120–23 (Tex.App.-Houston [1st Dist.], 2009, no pet. h.). We affirm the Amended Final Judgment as to appellant's Texas Finance Code cause of action based on the inclusion of the Dealer Inventory Tax in the amount financed.

■ In addition, we hold appellant failed to raise a fact issue on her fraud cause of action regarding the inventory tax. In her affidavit, appellant states: "In connection with the purchase, I was charged a vehicle inventory tax of $62.49. I relied on [appellee's] representations to me as presented in the contract and buyers [sic] order that this was a tax I owed." As discussed above, appellee's use of "Dealer's Inventory Tax Paid to Seller" has been approved by the Texas Consumer Credit Commissioner for inclusion in retail installment contracts. *DiBello,* 288 S.W.3d at 121-22. In addition, the First Court of Appeals has determined that, without other evidence of misrepresentations, the use of the phrase "Dealer's Inventory Tax Paid to Seller" is insufficient to support a fraud cause of action. *Id.* at 122. Because the only evidence appellant produced in response to appellee's motion for summary judgment was the Contract's use of the phrase "Dealer's Inventory Tax Paid to Seller," we hold she failed to create a fact issue that (1) appellee made an affirmative misrepresentation regarding the Dealer Inventory Tax, and (2) conveyed a false impression regarding the Dealer Inventory Tax. Therefore, we affirm the Amended Final Judgment as it relates to appellant's fraud causes of action based on the Dealer Inventory Tax.

**D. The trial court properly granted appellee's motion for summary judgment on appellant's DTPA cause of action.**

■ In her Original Petition, appellant sought injunctive relief under section 17.50(b)(2) & (4) of the DTPA enjoining appellee from its allegedly wrongful conduct harming Texas consumers. Prior to

the hearing on appellee's first motion for summary judgment, appellant filed her First Amended Petition abandoning her cause of action under the DTPA. Then, in her Second Amended Petition, appellant revived the cause of action seeking injunctive relief. Citing Rule 166a(c) of the Texas Rules of Civil Procedure,[6] appellee contends on appeal that since appellant did not seek the trial court's permission to file her second amended petition, her DTPA cause of action had been abandoned and was not before the trial court. Assuming without deciding appellant's DTPA cause of action was timely plead and before the trial court, we conclude the trial court properly granted appellee's motion for summary judgment on the DTPA cause of action.

■ To obtain injunctive relief under the DTPA, a plaintiff must show that the acts sought to be enjoined were a producing cause of damage to other consumers. *See David McDavid Pontiac, Inc. v. Nix*, 681 S.W.2d 831, 839 (Tex.App.-Dallas 1984, writ ref'd n.r.e.). As one basis for summary judgment on appellant's DTPA cause of action, appellee asserted appellant had no evidence that appellee's allegedly wrongful conduct was a producing cause of damage to consumers. In her summary judgment response as well as here on appeal, appellant has not pointed out any evidence in the appellate record raising a fact issue on that element of her injunction cause of action. Therefore, we affirm the Amended Final Judgment as it relates to appellant's DTPA cause of action.

### Conclusion

Having overruled all arguments raised in appellant's single issue on appeal, we affirm the trial court's Amended Final Judgment.

---

6. The relevant part of Rule 166a(c) provides: "The judgment sought shall be rendered forthwith if ... (ii) the pleadings, ... on file at the time of the hearing, or filed thereafter and before judgment with permission of the court, show that ... there is no genuine issue as to any material fact...." Tex.R. Civ. P. 166a(c).