

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-22-00042-CV

---

IN THE INTEREST OF J.C., A CHILD

---

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 21-0471

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

## MEMORANDUM OPINION

After Mother delivered J.C., both she and J.C. tested positive for cocaine and Mother admitted that she used cocaine throughout her pregnancy, which resulted in J.C. being removed from Mother's care. On the petition of the Texas Department of Family and Protective Services, the trial court terminated Mother's parental rights to J.C.[1] based on statutory grounds E, N, O, and P and its finding that termination was in the best interests of the child.[2] *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E), (N), (O), (P), (b)(2). Mother appeals the termination of her parental rights and asserts that her right to due process was violated (1) when the trial court discharged her court-appointed counsel four months before trial and appointed a different counsel three days before trial and (2) when the court required her to sign a document acknowledging certain conditions related to the appointment of her second counsel. She also claims that she was denied the effective assistance of counsel.[3] We will affirm the trial court's judgment.

---

[1]In order to protect the privacy of the child, we refer to him by his initials and refer to his family members by pseudonyms. *See* TEX. R. APP. P. 9.8(b)(2).

[2]The parental rights of J.C.'s unknown father were also terminated.

[3]In a footnote, Mother also asserts that the evidence is legally and factually insufficient to support the trial court's finding under statutory ground N. However, when there is also a finding that termination is in the best interests of the child, only one statutory ground finding is necessary to support a judgment of termination. *In re L.E.S.*, 471 S.W.3d 915, 920 (Tex. App.—Texarkana 2015, no pet.). "When the trial court makes findings that multiple statutory grounds support termination of parental rights and the appellant does not challenge all statutory grounds found, we will affirm the trial court's termination order based on the unchallenged statutory ground if the trial court's best-interest finding is also unchallenged." *In re B.B.*, No. 06-22-00051-CV, 2022 WL 10827087, at *3 (Tex. App.—Texarkana Oct. 19, 2022, no pet.) (mem. op.) (citing *In re A.G.-U.*, No. 06-17-00078-CV, 2017 WL 5473766, at *1 (Tex. App.—Texarkana Nov. 15, 2017, no pet.) (mem. op.)). Because Mother did not challenge statutory grounds E, O, and P and did not challenge the best-interest finding, we overrule this issue.

## I.      Procedural Background

On May 12, 2021, the Department filed its original petition for protection of J.C., for conservatorship, and for termination of Mother's parental rights. On that same date, the trial court found that Section 161.003(b) of the Texas Family Code required the appointment of an attorney ad litem for Mother and appointed Tim Cariker as her attorney. *See* TEX. FAM. CODE ANN. § 161.003(b). According to the record, Cariker appeared on behalf of Mother at the adversary hearing on May 18, 2021, at a status hearing on July 29, 2021, and at the initial permanency hearing on November 3, 2021.[4] Mother did not appear at those hearings, but she attended the family group conference on June 8, 2021, and signed her family service plan on July 7, 2021.

For the first several months, Mother was cooperative with the Department and attended her scheduled visits with J.C., but she did not work any services required under her service plan. From June through September 2021, Mother tested positive for cocaine five times. In October, November, and December 2021, Mother failed to complete drug testing requested by the Department. Also, in November and December 2021, Mother missed four scheduled visits with J.C.

At the final permanency hearing on January 27, 2022, the trial court sua sponte discharged Mother's appointed counsel and found that Mother had not participated in the case so

---

[4]At some time between the status hearing and the initial permanency hearing, this case was reassigned to the Honorable Lisa M. Andrews, associate judge, Northeast Child Protection Court Number 1.

that the appointment was no longer necessary.[5]  Neither Mother nor her appointed counsel,

Cariker, attended that hearing.[6]  The record does not reflect that the trial court or anyone else

served either Mother or her appointed counsel with the order discharging her appointed counsel.

On May 4, 2022, Mother filed an affidavit of inability to pay attorney fees.  James Terry

was appointed to be her counsel on May 9, 2021.  Apparently in conjunction with her affidavit,

Mother executed a document titled "Acknowledgment of Conditions for Appointment of

Attorney for Indigent Parent" that purported to give Mother's consent to the imposition of certain

sanctions if she did not attend hearings.  Terry received the file on the afternoon of May 10, and

the final hearing was held on May 12.  After a one-day hearing, the trial court terminated

Mother's parental rights.

## II.     Mother Has Not Shown that Her Due Process Rights Were Violated when the Trial Court Discharged Her First Appointed Counsel

In her first issue, Mother asserts that the trial court violated her right to due process when

it discharged her first appointed counsel and did not appoint her another attorney until three days

before the trial.  Mother argues that, because she was indigent and appeared in opposition to the

termination suit, she was entitled to appointed counsel.  She also argues that, once appointed,

counsel is allowed to withdraw only for good cause and with appropriate terms and conditions,

---

[5]At the hearing, the trial court stated, "[Mother] . . . was served on May 17, 2021.  I don't show that she has made the last two hearings in this case, so at this time I am releasing Mr. Cariker from his representation of [Mother]."

[6]The trial court's permanency hearing order before final order recites that Kyle Dansby, who had been appointed attorney ad litem for J.C., was standing in for Cariker.  However, the recording of that hearing showed that no announcements of appearances were taken before the trial court discharged Cariker and that, when Dansby made his announcement, he appeared only as attorney ad litem for J.C.

4

citing *In re P.M.*, 520 S.W.3d 24 (Tex. 2016). Mother argues that a trial court's dissatisfaction with a parent's participation in the case is not good cause.[7]

### A.     An Indigent Parent's Right to an Attorney

In a suit filed by a governmental entity that seeks the termination of the parent-child relationship, Section 107.013 of the Texas Family Code requires the trial court to "appoint an attorney ad litem to represent the interests of . . . an indigent parent of the child who responds in opposition to the termination." TEX. FAM. CODE ANN. § 107.013(a)(1). Subsection (d) sets forth the process for an indigent parent to invoke this right to appointed counsel:

> The court shall require a parent who claims indigence under Subsection (a) to file an affidavit of indigence in accordance with Rule 145(b) of the Texas Rules of Civil Procedure before the court may conduct a hearing to determine the parent's indigence under this section. . . . If the court determines the parent is indigent, the court shall appoint an attorney ad litem to represent the parent.

TEX. FAM. CODE ANN. § 107.013(d). The Texas Supreme Court has determined that the appointment of an attorney for an indigent parent is only required "when an affidavit of indigence has actually been filed and the trial court has determined the parent is truly indigent." *In re B.C.*, 592 S.W.3d 133, 136 (Tex. 2019) (per curiam); *see* TEX. FAM. CODE ANN. § 107.013(d).

---

[7]In support of her argument, Mother notes that the Legislature recently amended Section 264.203 of the Texas Family Code by expanding an indigent parent's right to counsel and by only allowing a trial court to discharge an attorney if it later finds that the parent is not indigent. *See* TEX. FAM. CODE ANN. § 264.203(h) (Supp.). Mother urges that the same standard should apply in this case. However, as Mother acknowledges, Section 264.203 does not apply to cases in which the Department seeks the termination of parental rights. *See* TEX. FAM. CODE ANN. § 264.203(a) (Supp.). Thus, Section 264.203 is not applicable to this case. As will be seen, the Texas Family Code has specific sections that set forth the rights of parents to appointed counsel in cases in which the Department seeks termination of parental rights. For that reason, we must follow the legislative mandates found in those sections applicable to such termination cases.

When a trial court determines that a parent is indigent under Section 107.013, she "is presumed to remain indigent for the duration of the suit" unless the court reconsiders its determination "on the motion of the parent, the attorney ad litem for the parent, or the attorney representing the governmental entity, [and] determines that the parent is no longer indigent due to a material and substantial change in the parent's financial circumstances." TEX. FAM. CODE ANN. § 107.013(e). Further, an attorney ad litem for an indigent parent appointed under Section 107.013 continues to serve as the parent's attorney for the duration of the case, unless the attorney is relieved of his duties or replaced by another attorney after the trial court finds good cause rendered on the record. TEX. FAM. CODE ANN. § 107.016(2) (Supp.). A trial court's reconsideration of its indigency determination on the motion of a party has been found to constitute good cause for relieving appointed counsel of his duties. *In re G.S.*, No. 14-14-00477-CV, 2014 WL 4699480, at *20–21 (Tex. App.—Houston [14th Dist.] Sept. 23, 2014, no pet.) (mem. op.). In addition, there may be other grounds that constitute good cause for relieving appointed counsel of his duties to an indigent parent. *See, e.g.*, *B.B. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-15-00082-CV, 2015 WL 2183581, at *5 (Tex. App.—Austin May 5, 2015, no pet.) (mem. op.) (finding good cause to allow appointed counsel to withdraw when a parent no longer wanted to be represented by that counsel, parent complained that counsel failed to follow her instructions, parent was not willing to follow counsel's advice, and parent told trial court that she wanted to represent herself or for her private attorney to do so). Nevertheless, because Texas has granted indigent parents the right to counsel, "the State must administer that right consistent with the Due Process clause." *In re S.K.A.*, 236 S.W.3d 875, 891 n.13 (Tex.

6

App.—Texarkana 2007, pet. denied) (quoting *In re A.H.L.*, 214 S.W.3d 45, 51 (Tex. App.—El Paso 2006, pet. denied)); *see In re B.B.*, 2015 WL 2183581, at *5 (allowing appointed counsel to withdraw consistent with due process when trial court warned parent against proceeding pro se and ordered appointed counsel to remain at trial as advisory counsel).

**B.     Analysis**

As noted above, Mother argues that, because she was indigent and responded in opposition to the termination, the trial court denied her right to due process by discharging her first appointed counsel. However, a parent's right to appointed counsel based on indigency does not become mandatory until she files an affidavit of indigence and she is determined to be indigent by the trial court. *In re B.C.*, 592 S.W.3d at 136. Had Mother filed her affidavit of indigence at the beginning of the case, and had her first attorney been appointed based on the trial court's determination that she was indigent, then Mother's due process rights—based on indigency—arguably would have been violated.[8] But Mother did not file her affidavit of indigence until May 4, 2021, and she was not determined to be indigent until May 9, 2021, over three months after her first appointed counsel was discharged from his representation. For that reason, Mother's right to appointed counsel based on indigency, and any associated due process rights, had not accrued at the time her first appointed counsel was discharged.[9]

---

[8]The Department has not cited, and we have not found, any statute or caselaw that gives the trial court the authority to sua sponte relieve an indigent parent's appointed counsel based on the failure of the parent to attend court hearings.

[9]As noted above, Mother's first appointed counsel was appointed under Section 161.003(b) of the Texas Family Code. However, Mother has not complained that the trial court violated her due process rights associated with any right to counsel she may have had under that section. Because "[w]e are restricted to addressing the arguments actually raised, not those that might have been raised," we may not address Mother's right to counsel under Section

7

We, therefore, find that Mother has not shown that her due process rights were violated when the trial court discharged her first appointed counsel. We overrule this issue.

## III. Mother Has Not Shown that Her Trial Counsel Rendered Ineffective Assistance

Mother also complains that her trial counsel rendered ineffective assistance. Section 107.103 of the Texas Family Code "afford[s] all parents appearing in opposition to state-initiated parental-rights termination suits the right to *effective* counsel regardless of whether counsel is appointed or retained." *In re D.T.*, 625 S.W.3d 62, 71 (Tex. 2021). "Ineffective-assistance-of-counsel claims in [parental-rights termination] cases, as in criminal cases, are governed by the United States Supreme Court's two-prong test articulated in *Strickland v. Washington*.[10]" *Id.* at 73 (citing *In re M.S.*, 115 S.W.3d 534, 544–45 (Tex. 2003)). The *Strickland* test follows:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* (quoting *Strickland*, 466 U.S. at 687). "A party claiming ineffective assistance of counsel must satisfy both prongs of the *Strickland* test to succeed." *Id.* (citing *In re M.S.*, 115 S.W.3d at 545).

"Allegations of ineffectiveness 'must "be firmly founded in the record."'" *In re J.J.*, 647 S.W.3d 524, 530 (Tex. App.—Texarkana 2022, no pet.) (quoting *Lampkin v. State*, 470 S.W.3d

---

161.003(b). *Feagins v. Tyler Lincoln-Mercury, Inc.*, 277 S.W.3d 450, 455 (Tex. App.—Texarkana 2009, no pet.) (quoting *Henry S. Miller Mgmt. Corp. v. Houston State Assocs.*, 792 S.W.2d 128, 134 (Tex. App.—Houston [1st Dist.] 1990, writ denied) (op. on reh'g)); *see also Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 782 (Tex. 2020).

[10]466 U.S. 668, 687 (1984).

876, 897 (Tex. App.—Texarkana 2015, pet. ref'd)). "The standard of review is much more deferential to trial counsel's actions when the claim is asserted for the first time on direct appeal because '[t]he reasonableness of counsel's choices often involves facts that do not appear in the appellate record,' and because 'trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective.'" *Id.* (quoting *Lampkin*, 470 S.W.3d at 898 n.10). "When a claim of ineffective assistance of counsel is raised for the first time on direct appeal, the record 'is in almost all cases inadequate to show that counsel's conduct fell below an objectively reasonable standard of performance.'" *Id.* (quoting *Lampkin*, 470 S.W.3d at 898).

"In examining counsel's performance under the first prong, 'we must take into account all of the circumstances surrounding the case, and must primarily focus on whether counsel performed in a "reasonably effective" manner.'" *In re D.T.*, 625 S.W.3d at 73–74 (quoting *In re M.S.*, 115 S.W.3d at 545). "Counsel's performance falls below acceptable levels only when the 'representation is so grossly deficient as to render proceedings fundamentally unfair.'" *Id.* at 74 (quoting *In re M.S.*, 115 S.W.3d at 545). "We give great deference to counsel's choices and indulge '"a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," including the possibility that counsel's actions are strategic.'" *Id.* (quoting *In re M.S.*, 115 S.W.3d at 545).

In this case, Mother did not attend any of the status or permanency hearings in the case. At trial, she testified that the final hearing was her first appearance in the case because she "wasn't ready to show up." Mother did not file an affidavit of indigence until one week before

9

the final hearing, and her counsel was not appointed until three days before trial. Further, her counsel did not receive the file until two days before trial. Under these circumstances, as Mother acknowledges in her brief, it is understandable that counsel may not have been fully prepared for trial.

Nevertheless, Mother asserts that counsel gave ineffective assistance because he did not file a motion for a continuance or request an extension of the case. Yet, the evidence at trial showed that Mother did not want an extension because she wanted to appear in court to let the trial court know that she wanted J.C. to be placed with her sister.[11] Since Mother insisted on

---

[11]Mother asserts that it is unclear whether she believed she could only have an extension to consider voluntary relinquishment of her parental rights. That assertion is based on the following exchange:

> Q.     [Mother's attorney] . . . . So we had a conversation today about how I was appointed on Monday and didn't get the stuff until Tuesday afternoon. And I kind of gave you your options on what today was and that we could file for an extension and talk about a voluntary relinquishment. And you said you did not want to do that, correct?
>
> A.     . . . . Yes.
>
> Q.     . . . Okay. So I explained to you today that because of your continued drug use and the fact you didn't work any services that they were going to have the grounds to terminate your rights and that that came with consequences, especially since you are pregnant right now, correct?
>
> A.     Correct.
>
> Q.     And that it was my advice that we should file for an extension so that we could do a voluntary relinquishment, so that would protect you and your child that you would have in the future?
>
> A.     Yes, sir.
>
> . . . .
>
> Q.     Okay. So your big concern, the reason that you wanted me to call you to the stand today, is that you want the Court aware of your opinion about where this child is to be placed, correct?
>
> A.     Yes.

going to trial rather than seeking an extension, we cannot say that counsel's following her instructions fell below the range of reasonable professional assistance.

Mother also faults her counsel for failing to object to evidence offered by the Department of Mother's drug use, the results of her drug tests, J.C.'s positive drug test, and J.C.'s alleged withdrawal symptoms. Mother argues that this evidence was hearsay and that the results of the drug tests should have been challenged under *Daubert*.[12] However, under cross-examination, Mother admitted (1) that she had used cocaine throughout her pregnancy with J.C., (2) that J.C. tested positive for cocaine at birth, (3) that every drug test she took during the case was positive for cocaine, (4) that she used cocaine three to four times a day until one month before the final hearing even though she was pregnant with another child, and (5) that J.C. had been sent to Dallas for lung treatments. Since Mother's counsel knew that Mother wanted to testify at trial and that she would be subject to cross-examination, we must presume that he made a reasonable choice not to object to this evidence, knowing that the same or similar evidence would be provided by Mother.

---

> Q. And what is that opinion?
>
> A. I want the child to be placed with my sister until my further notice. When I was in the hospital, the Judge told my family member, when I was not here, that the child could be placed with a family member. . . .

While it is not clear what Mother understood, it is also not clear from this exchange what her counsel advised her concerning the purpose and advantages of requesting an extension. Nothing in this exchange overcomes the presumption that trial counsel's advice regarding an extension fell within the range of reasonable professional assistance.

[12]*See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

We therefore find that Mother has not shown that her trial counsel rendered ineffective assistance. We overrule this issue.

## IV. Mother Has Not Shown a Violation of Her Due Process Rights Related to the Acknowledgment

Mother also complains that the trial court's use of the acknowledgment in this case, and other cases,[13] was unconstitutional. Mother argues that requiring her to execute the acknowledgment adds an additional requirement to obtaining and retaining appointed counsel: participation as defined by the trial court.[14] She maintains that, since these requirements are beyond the statutory requirements for indigent parents to obtain appointed counsel and allow the trial court to arbitrarily discharge appointed counsel for reasons not set forth in the statute, the acknowledgment violates her right to due process.

---

[13]The Department argues that Mother has no standing to complain that the use of the acknowledgment in other cases violates the constitutional rights of the parents involved in those cases. "Standing is implicit in the concept of subject-matter jurisdiction, which is never presumed and cannot be waived." *In re D.W.G.K.*, 558 S.W.3d 671, 677 (Tex. App.—Texarkana 2018, pet. denied) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444–45 (Tex. 1993)). "A party 'may not complain of errors that do not injuriously affect it or that merely affect the rights of others.'" *Id*. at 678 (quoting *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000)). Because the use of the acknowledgment in other cases does not affect Mother and merely affects the rights of others, we find that she does not have standing to complain about the use of the acknowledgment in other cases.

[14]The acknowledgment provided:

> I, [Mother], acknowledge that failure to maintain contact with court-appointed counsel or failure to attend statutorily-required [sic] hearings may result in findings by the Court that include but are not limited to the following:
>
> 1.      Consent to removal of court-appointed counsel;
> 2.      Consent to appointment of the [Department's] temporary managing conservatorship of the child or children the subject of this suit;
> 3.      Consent to withdraw any discovery requests or request for jury trial;
> 4.      Consent to allow the [Department] to proceed to a final hearing which may result in the termination of my parental rights.

As discussed earlier, the only requirements for an indigent parent who responds in opposition to a termination suit filed by the Department to obtain appointed counsel is to file an affidavit of indigence and obtain a determination of indigency by the court. *See In re B.C.*, 592 S.W.3d at 136; TEX. FAM. CODE ANN. § 107.013(d). We have found no statutory or other authority that authorizes a trial court to impose additional requirements as a condition for appointment of counsel for an indigent parent. Nor have we found any statutory or other authority that authorizes a trial court to require an indigent parent to "consent" to the trial court's imposing sanctions on the parent, including the discharge of appointed counsel, because of the parent's failure to sufficiently communicate with appointed counsel or failure to attend court hearings.

Nevertheless, in this case, Mother has not shown that she was denied appointed counsel after she filed her affidavit of indigence or that her appointed counsel was discharged as a result of the acknowledgment. Nor has she shown that appointment of counsel was conditional on the execution of the acknowledgment. Rather, Mother was appointed counsel who represented her through trial.

On this record, we find that Mother has not shown that her right to due process was violated. We overrule this issue.

## V.    Disposition

For the reasons stated, we affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:    February 7, 2023
Date Decided:      March 2, 2023