In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-21-00079-CV
_____

**ADRIAN RAFAEL MEJIA, Appellant**

**V.**

**MOBILOIL FEDERAL CREDIT UNION, Appellee**

**On Appeal from the County Court of Law No. 1**
**Jefferson County, Texas**
**Trial Cause No. 135149**

## MEMORANDUM OPINION

In this suit to recover a deficiency on a debt, Adrian Rafael Mejia, the debtor, appeals from a judgment awarding Mobiloil Federal Credit Union, the creditor, around $13,772 for the deficiency left on the loan.[1]

---

[1]For convenience, we have rounded all numbers mentioned in the opinion other than those we have quoted from exhibits in the record to whole numbers. Together with the contract damages award, the judgment the trial court signed includes additional awards for attorney's fees, prejudgment and post-judgment interest, and costs of court.

In his first issue, Mejia contends that in the summary judgment proceeding that led to the trial court's judgment, the trial court erred in granting Mobiloil's combined traditional and no-evidence motion for summary judgment for two reasons. First, he claims Mobiloil failed to prove he was in default on his loan when Mobiloil accelerated his note. Second, Mejia argues that a genuine issue of material fact exists on his affirmative defense that Mobiloil failed to mitigate its damages by demanding payment from the company that insured his vehicle against damages before selling it at an auction, which he claims would have also reduced the outstanding balance he owed Mobiloil on his loan.

In his second issue, Mejia argues the trial court erred in overruling his objections to the affidavit of the president of Safety Adjusters, Inc., the company that repossessed and stored Mejia's vehicle. The affidavit is relevant to Mejia's claim that his SUV was damaged by water due to flooding after it was repossessed. In the affidavit, the president of Safety Adjusters swore that while Mejia's vehicle was in Safety Adjuster's possession, "[t]he condition of the vehicle, when it left Safety Adjusters, Inc., was the same as when it was recovered by Safety Adjusters, Inc."

Because the trial court did not err in granting Mobiloil's combined motion for summary judgment, we will affirm.

Background

After signing a Retail Installment Contract to obtain a loan, Adrian Rafael Mejia bought a used SUV from Energy Country Ford. Mejia financed $39,687 of the vehicle's cost. Under his loan, Energy Country Ford had the right to assign the Note to Mobiloil. No one disputes that Mobiloil acquired the Note from the dealership where Mejia bought his car.

The terms of Mejia's loan required him to repay the loan (with interest) in seventy-two monthly installments. Mobiloil also acquired a security interest in Mejia's SUV, and the loan's provisions gave Mobiloil a security interest in Mejia's SUV to secure "all your promises in it." Under the loan, Mejia was in default upon failing to make an installment payment "when it is due[.]" Mobiloil had other rights under the loan's provisions too, including the right to accelerate the loan on Mejia's default, demand payment in full, and repossess and sell the SUV.

The summary-judgment evidence shows that Mejia signed the Retail Sales Contract in October 2018. The terms of the Retail Sales

3

Contract required Mejia to make monthly loan payments of $683, with the first payment due on November 22, 2018. A payment was late if not received by Mobiloil fifteen days after it was due. If more than fifteen-days late, the agreement required Mejia to pay a late charge of five percent of the scheduled payment.

Mejia made his first payment under the Retail Sales Contract—which was due on November 22—on December 10, 2018. That made his first payment late. Mejia's payment history over the life of the loan before Mobiloil accelerated the debt reflects that Mejia sometimes made his payments outside the fifteen-day grace period and sometimes paid less than the scheduled payment he owed on the debt.

Mejia made ten payments on the loan before August 29, 2019, when Mobiloil declared the loan in default. As mentioned, Mejia's December 2018 payment was more than fifteen-days late, but that payment didn't include the five percent late-charge penalty. Mejia's April 2019 payment was also late, and when he made that payment, he paid less than half his regularly scheduled payment that month. While Mejia's made his May 2019 payment on time, he didn't pay the $683 under his payment schedule for that month. Instead, he paid around half that amount. Had

4

Mejia made timely payments of $683 in the ten months before Mobiloil accelerated the debt, Mejia would have paid around $6830 in principal and interest on the loan, not including late charges and fees. When Mobiloil accelerated the loan Mejia had paid Mobiloil just $6193 in principal and interest on the loan, not including late charges and fees.

After Mejia failed to cure the deficiency, Mobiloil repossessed the SUV. Mobiloil advised Mejia the SUV would be sold "sometime after 09/27/2019[,]" and that if Mejia needed to remove anything from the vehicle, he should contact Safety Adjusters and arrange to remove his possessions from the vehicle before it was sold. Mejia arranged to remove his property from the SUV, and in an affidavit that Mejia filed just four days before the trial court granted Mobiloil's motion, Mejia swore:

> When I reached the vehicle, I personally observed a water line indicating the vehicle had been partially submerged in water. In addition, when I observed the interior of the vehicle, the vehicle had moldy, wet smell and the interior of the vehicle was damp. My personal belongings had also been damaged by water.

In November 2019, Mobiloil advised Mejia that although it had sold the SUV, it received less money from the sale than he owed on his loan. According to Mobiloil's letter, Mejia owed Mobiloil $13,797 after Mobiloil

5

had accounted for the proceeds from the sale ($23,200), the expenses Mobiloil incurred for repossessing and selling the SUV ($750), and the refund Mobiloil received from Energy Country Ford for the premium Mejia paid on a GAP and Extended Warranty policy ($1,781), which Mejia bought when he purchased the SUV from Energy Country Ford.

In March 2020, Mobiloil sued Mejia for breaching the Retail Sales Contract. It sought to recover the amount it claimed Mejia owed it on the loan ($13,772), prejudgment interest under the contract on that amount, and attorney's fees.[2] After Mejia answered, Mobiloil moved for summary judgment, alleging the evidence showed Mejia defaulted on the loan and that as of January 3, 2020, he owed Mobiloil $13,772 plus 7.5 percent interest as provided by the contract. Mobiloil filed exhibits to support its motion, including the affidavit of Shellye Kimler, Mobiloil's records custodian, and eight pages of records that Mobiloil kept in the regular course of business on Mejia's loan. Kimler swore that Mejia failed to pay Mobiloil as agreed under the terms that applied to Mejia's loan. She also

---

[2]It's not clear from the record why Mobiloil told Mejia his deficiency was $13,797 in its letter of November 2019 but then sued him for $13,772, twenty-five dollars less, in March 2020.

6

swore that as of January 3, 2020, the outstanding balance on Mejia's loan was $13,772.

Although Mejia responded to Mobiloil's motion, he didn't file evidence to support his response. Mejia also amended his answer, raised two affirmative defenses, and filed counterclaims. As affirmative defenses, Mejia alleged Mobiloil breached the Retail Sales Contract first and failed to mitigate its damages by notifying Mejia's GAP insurer that his SUV had been damaged in a flood. As counterclaims, Mejia alleged Mobiloil (1) breached the contract by "unilaterally modifying the contract's repayment terms," (2) negligently failed to ensure that his vehicle was protected from being damaged by water due to flooding while it was in Safety Adjusters' possession, (3) negligently entrusted the vehicle to Safety Adjusters, (4) negligently failed to notify his GAP insurer of damage caused by the flood so the insurance proceeds under the GAP policy could offset the outstanding balance that he owed Mobiloil on the loan, and (5) engaged in unfair debt collection practices (a) by collecting interest, fees, charges or expenses that were not authorized by the Retail Sales Contract, (b) by modifying the terms of the agreement,

and (c) by accelerating the debt based on his alleged noncompliance with the change Mobiloil unilaterally made in the contract's terms.

Months later, Mobiloil filed an amended combined traditional and no-evidence motion for summary judgment. The exhibits filed to support the combined motion include Kimler's affidavit, Mobiloil's business records, the Retail Sales Contract, Mejia's Answers to Mobiloil's Interrogatories and Requests for Admission, the affidavit of Mobiloil's attorney, and the affidavit of Lawrence Ray (the president of Safety Adjusters, Inc.).

Four days before the trial court conducted the hearing on Mobiloil's combined motion for summary judgment, Mejia responded to Mobiloil's amended motion. In his response, Mejia objected to Ray's affidavit, claiming the statements Ray made in his affidavit were not based on his personal knowledge and constituted hearsay because Ray didn't personally observe the flood that Mejia alleged had damaged his car and because Ray failed to state he had personally inspected Mejia's SUV. Mejia also asked the trial court to allow more time for discovery, arguing that by objecting to the discovery he served on Mobiloil, Mobiloil had interfered with his ability to show whether the GAP insurance on his

SUV would have covered the damages to his SUV when it was on Safety Adjusters' lot. According to Mejia, any payments Mobiloil might have received under his GAP policy would have reduced the remaining balance on his loan after it was sold at auction had Mobiloil notified the GAP insurer of the flood event that had damaged his SUV while it was on Safety Adjusters' lot.

Mejia also argues the discovery he wanted and was entitled to have Mobiloil produce would have revealed facts that were relevant to his counterclaims and affirmative defenses, specifically his claim that Mobiloil breached the contract first and his claim that Mobiloil engaged in unlawful debt collection practices in collecting the debt. Finally, in the unsworn declaration attached to his response, Mejia states that on the day Mobiloil repossessed his vehicle, he "had made all payment that had become due on the vehicle." As to the alleged damage to his SUV from the flood, he declared that while retrieving personal items from the SUV on Safety Adjusters' lot, he "observed a water line indicating that the vehicle had been partially submerged in water." Mejia also stated in his declaration that when he saw the SUV in Safety Adjusters' lot, the interior of the SUV was "damp" and it had "a moldy, wet smell."

9

On January 11, 2021, the trial court heard Mobiloil's combined traditional and no-evidence motion for summary judgment by submission. It found $13,772 was due and owing under the Retail Sales Contract on Mejia's loan. In its judgment, the court awarded Mobiloil $13,772 on its breach of contract claim, attorney's fees, prejudgment interest, post-judgment interest, and court costs. The judgment states" [a]ll relief not expressly given is denied," and the judgment contains language indicating the trial court intended its judgment to be final. Mejia filed a motion for new trial, but it was overruled by operation of law. This appeal followed.

## Standard of Review

Mobiloil's traditional motion for summary judgment addressed its breach of contract claim. The no-evidence section of its motion for summary judgment addressed Mejia's affirmative defenses and counterclaims.

We apply a de novo standard to review rulings granting motions for summary judgment.[3] When, as here, the trial court didn't specify the

---

[3]*Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017).

10

exact basis for its ruling, we must affirm the "summary judgment if any of the grounds asserted are meritorious."[4] In our review, we are restricted to considering the arguments the nonmovant presented to the trial court in its written motion or response.[5]

Mobiloil combined their traditional and no-evidence motions into a single hybrid motion for summary judgment.[6] In one section of its hybrid motion, Mobiloil asserted that Mejia could produce no evidence to support his affirmative defenses of prior material breach and his claim that Mobiloil failed to mitigate its damages. In another, it alleged Mejia could produce no evidence to support his counterclaims alleging Mobiloil breached the contract by modifying its terms, negligently failed to protect the SUV, negligently entrusted the SUV to Safety Adjusters, or negligently failed to act on his behalf to contact his GAP insurer since it

---

[4]*Id.*

[5]*McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993).

[6]Motions for traditional summary judgment, filed under Rule 166a(a) or (b), may be combined with Rule 166a(i) no-evidence motions in what are often called hybrid motions for summary judgment. *Binur v. Jacobo*, 135 S.W.3d 646, 650-51 (Tex. 2004); *see also City of Magnolia 4A Econ. Dev. Corp. v. Smedley*, 533 S.W.3d 297, 299 (Tex. 2017) (per curiam).

was not Mejia's agent and since the SUV was not damaged in a flood. Mobiloil also alleged there was no evidence that it engaged in any unfair debt collection practices by charging interest, a fee, a charge, or an expense that was not authorized under the Retail Sales Contract.

In appeals from hybrid motions, we first decide whether the trial court's ruling on the no-evidence part of the hybrid motion may be sustained before addressing the trial court's ruling on the traditional section of the motion.[7] In no-evidence motions, the motion must allege that no evidence supports one or more of the essential elements of a party's defense.[8] Thus, the motion must state "the elements as to which there is no evidence."[9] When the motion contains the required no-evidence allegations, the burden of proof shifts to the defendant to produce evidence "raising an issue of material fact as to the elements

---

[7]*Crescent Terminals, LLC v. Saybolt, LP*, No. 09-16-00386-CV, 2018 Tex. App. LEXIS 1109, at *9 (Tex. App.—Beaumont Feb. 8, 2018, no pet.); *Flores v. City of Liberty*, 318 S.W.3d 551, 553 (Tex. App.—Beaumont 2010, no pet.).
[8]Tex. R. Civ. P. 166a(i).
[9]*Id*.

12

specified in the motion."[10] When deciding the no-evidence motion, the trial court must grant the motion if

> (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.[11]

"A traditional motion for summary judgment requires the moving party to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law."[12] In reviewing summary-judgment evidence, we "take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor."[13]

## Analysis

We begin with Mejia's arguments challenging the trial court's no-evidence rulings. Under Rule 166a(i), the Rule of Procedure that applies to no-evidence motions, a party may file a no-evidence motion for

---

[10]*Mack Trucks v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

[11]*King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

[12]*City of Richardson v. Oncor Elec. Delivery Co. LLC*, 539 S.W.3d 252, 258 (Tex. 2018); *see also* Tex. R. Civ. P. 166a(c).

[13]*Hillis v. McCall*, 602 S.W.3d 436, 440 (Tex. 2020) (cleaned up).

summary judgment after there has been "adequate time for discovery[.]"[14] The record shows that when Mobiloil sued, it designated the case as a Level 1 discovery case.[15] The case had been on file for over eight months when Mobiloil filed its hybrid motion for summary judgment. Because Mobiloil first served Mejia with discovery on April 14, 2020, the discovery period in the case ended on October 11, 2020. The Clerk's Record doesn't show that Mejia filed a motion asking the trial court to rule on Mobiloil's objections or to compel Mobiloil to answer the discovery that Mejia complains Mobiloil failed to answer.

When a party fails to produce evidence raising a fact issue on the elements of the claims the opposing party challenged in a no-evidence motion, the Rules of Procedure requires the trial court to "grant the motion[.]"[16] Even though Mejia filed a response to Mobiloil's hybrid motion, he filed it less than seven days before the hearing and without

---

[14]Tex. R. Civ. P. 166a(i).

[15]*See id*. 190.2 (providing that in Level 1 discovery cases, the discovery period "begins when the suit is filed and continues until 180 days after the date the first request for discovery of any kind is served on a party").

[16]*Id*. 166a(i).

leave of court.[17] As mentioned, Mejia filed his response to Mobiloil's hybrid motion just four days before the hearing. Nothing in the record shows that Mejia obtained leave of court to file a late response to Mobiloil's hybrid motion. Furthermore, while the trial court's judgment reflects the court considered the evidence "supporting" Mobiloil's motion, the judgment is silent about whether the court considered the evidence Mejia attached to his late-filed response. Given Mejia's failure to obtain the trial court's permission to file a late response and the fact the record does not show the trial court considered his late-filed response in ruling on Mobiloil's motion, we presume the trial court didn't consider the evidence Mejia attached to his response when it granted Mobiloil's hybrid motion and denied Mejia relief on his affirmative defenses and counterclaims.[18] And since the trial court did not have to consider the evidence Mejia attached to his late-filed response, the trial court did not

---

[17]*Id*. 166a(c) ("Except on leave of court, the adverse party, not later than seven days prior to the day of the hearing, may file and serve opposing affidavits or other written response.").

[18]*See INA of Texas v. Bryant*, 686 S.W.2d 614, 615 (Tex. 1985) (where the summary-judgment response was untimely and nothing in the record signified the late filing was with leave of court, "we must presume that the trial court did not consider it").

err in granting Mobiloil's no-evidence part of Mobiloil's motion because Mejia produced no evidence to support his affirmative defenses or his counterclaims.[19]

Next, we turn to Mejia's complaints about the trial court's ruling granting the traditional part of Mobiloil's hybrid motion, which addressed Mobiloil's breach of contract claim. As to that part of Mobiloil's hybrid motion, Mejia argues that Kimler's affidavit and the business records she verified didn't "conclusively establish that [he] breached the contract." Mejia also points to the statement in his unsworn declaration stating he "made all payments required under the contract." But not only does the summary-judgment evidence show that Mejia's unsworn declaration is false, we must presume the trial court didn't consider it for the reasons already discussed.[20]

Still, to affirm the judgment, we must explain why Mejia's argument claiming that Mobiloil's evidence is insufficient to prove he breached his promises under the Retail Sales Contract lacks merit. The evidence before the trial court shows Mejia failed to make each of the

[19]Tex. R. Civ. P. 166a(i).
[20]*Id.* 166a(c).

installment payments when they were due. There is no evidence that contradicts Mobiloil's evidence showing that some of Mejia's payments, including his June 2019 payment, were late. The evidence also shows Mejia was behind on his payments when Mobiloil declared the loan in default and accelerated the loan. The statements in Kimler's affidavit are supported by the business records that Mobiloil maintained on Mejia's loan. Mejia didn't present any evidence to create a fact issue to show that he was not in default when Mobiloil accelerated the loan. Mobiloil's business records show Mejia failed to make each scheduled payment on time and in the amount called for in the payment schedule on his loan, including the June 22nd payment Kimler identified in her affidavit. We conclude Mobiloil met its summary-judgment burden to prove that Mejia breached the payment promises he made on his loan, promises that were material to his right to prevent Mobiloil from declaring the loan in default and from accelerating the debt on the loan.

Mejia raises no other arguments claiming Mobiloil didn't prove its breach of contract claim. For example, he doesn't complain the Mobiloil's proof isn't sufficient to prove the contract damages Mobiloil suffered under the contract were $13,772, nor does he challenge the trial court's

17

awards for prejudgment interest, for the attorney's fees for the trial ($7,500), or for the attorney's fees for the appeal ($7,500).

Mejia's last argument supporting his first issue complains the trial court abused its discretion in denying his request for more time to conduct discovery. Mejia suggests he needed more time to investigate the claims and defenses he raised in his pleadings. But Mejia's request for more time is in his late-filed response to Mobiloil's hybrid motion. We have already explained why the trial court was not required to consider his late-filed response.

But we recognize that in August 2020, in responding to a motion for summary judgment that Mobiloil never set for hearing and later abandoned, Mejia complained that Mobiloil had lodged objections to his discovery requests and had not answered his discovery. Still, all Mejia did in responding to Mobiloil's earlier motion for summary judgment was complain he didn't have the answers he needed to respond to the initial motion for summary judgment that Mobiloil filed in August 2020, a motion it later abandoned by amending. For instance, Mejia neither asked the trial court to compel Mobiloil to answer his discovery in his response, nor did he file a motion to compel and ask the court to compel

18

Mobiloil to rule on Mobiloil's objections and answer his discovery. In December 2020, Mobiloil abandoned its earlier motion for summary judgment by filing the hybrid motion for summary judgment, which is the motion at issue in this appeal.

As to the GAP policy Mejia purchased, it seems unlikely to us that the discovery of a GAP policy would have led to relevant evidence anyway, since "GAP Insurance is insurance to reimburse the retail buyer for the amount computed by subtracting the proceeds of the insured's basic collision policy on the motor vehicle from the amount owed on the vehicle if the vehicle has been rendered a total loss."[21] The evidence shows the sale of the SUV covered a substantial portion of the unpaid balance Mejia owed on his loan. He also never alleged or argued the damages from the flood resulted in the SUV suffering a total loss. Finally, the discovery period for this Level 1 case ended in October 2020, so by January 2021 when the trial court conducted the hearing on Mobiloil's hybrid motion, the discovery period had ended.

---

[21]*Rivers v. Charlie Thomas Ford, Ltd.*, 289 S.W.3d 353, 355 fn 1 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing Tex. Fin. Code Ann. § 348.208(b)(4)).

"When a party contends that it has not had an adequate opportunity for discovery before a summary judgment hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for continuance."[22] The record does not show that Mejia filed a motion to continue the January 2021 hearing the trial court held on Mobiloil's hybrid motion for summary judgment. So not only did Mejia fail to exercise diligence in seeking to obtain the discovery he claims he needed, he also didn't follow the requirements of the Rules of Civil Procedure by filing a verified motion for continuance or an affidavit explaining why he needed a continuance of the hearing.[23]

In Mejia's second issue, he argues the trial court erred in overruling his objections to the affidavit of Lawrence Ray, the president of Safety Adjusters. Mejia raised these objections in his late-filed response. Because the record doesn't affirmatively show the trial court considered the late-filed response, we must presume it did not. Besides, the only matter Ray addressed in his affidavit was whether Mejia's SUV had been

---

[22]*Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996); *see also* Tex. R. Civ. P. 166a(g), 251, 252.
[23]Tex. R. Civ. P. 251.

20

damaged by water while on Safety Adjusters' lot. And since Mejia's only evidence supporting that claim is his unsworn declaration, which he filed with a response the trial court didn't consider, Ray's affidavit is irrelevant to the facts on which the judgment is based.

## Conclusion

Having addressed why Mejia's arguments challenging the trial court's rulings lack merit, we overrule Mejia's issues. For the reasons explained above, the trial court's judgment is

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on September 14, 2022
Opinion Delivered March 23, 2023

Before Golemon, C.J., Horton and Johnson, JJ.

21